**Melencio Legui LIM, Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

No. 98–70683.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 4, 1999[1]

Decided Aug. 29, 2000

---

1. Pursuant to Fed. R.App. P. 34(a)(2), the panel unanimously finds this case suitable for decision without oral argument.

**932**

Amos Lawrence, San Francisco, California, for petitioner.

Ann Varnon Crowley, Department of Justice, Washington, D.C., for the respondent.

Before: GOODWIN, SCHROEDER, and ALARCON, Circuit Judges.

GOODWIN, Circuit Judge:

Petitioner Melencio Legui Lim petitions from the dismissal by the Board of Immigration Appeals ("BIA") of his appeal from an immigration judge's ("IJ") denial of asylum and denial of withholding of deportation. We hold that the BIA erred in denying asylum eligibility, but we affirm the BIA's denial of withholding of deportation.

## BACKGROUND

Melencio Lim entered the United States in August of 1991 and voluntarily approached the INS in September of 1992 to apply for asylum. At his asylum hearing before the IJ, he conceded deportability and testified to the following account. From 1972 until 1987, Lim served as a police officer for the government of the Philippines. In 1978 he joined the intelligence unit, for whom he infiltrated Communist student groups and subsequently investigated the dissident New People's Army ("NPA"), the military arm of the local Communist Party.

As an intelligence officer, Lim investigated NPA "Sparrow Units," which specialize in the propaganda killings of public officials, and which were suspected in the deaths of several police officers over a two-month span in 1980–81. During a dragnet, Lim participated in a fire fight with a Sparrow Unit and its leader, Mario Subona. Lim's participation contributed to the arrests of Subona and several leaders of Subona's organization, and Lim subsequently revealed his own identity when he took their statements and confessions. Lim remained with the intelligence unit, and from 1984–87 he investigated assassinations allegedly committed by the NPA. In 1985, Lim testified in open court against Subona and other subversive leaders, who apparently avoided conviction due to the trial judge's exclusion of the confessions.

Shortly thereafter, Lim appeared on an NPA death list and began receiving death threats. In response, Lim received police

protection and limited his public travel. Still, over the next years, Lim continued to receive threatening phone calls as well as threatening letters tied with a black ribbon, which signifies an NPA death threat. In 1987, to escape the threats, Lim left the police department and began practicing law in the Philippines. The threats continued, however, and Lim hired a personal bodyguard.

Then, from 1990–91, three of Lim's former colleagues in the Mario Subona investigation were murdered one-by-one. Although neither Lim nor his family was ever confronted or attacked, in May of 1991 Lim began to notice that he was being followed by unidentified men. In August of 1991, Lim left his wife and four children in the Philippines and fled to the United States. As noted, Lim then voluntarily approached the INS and requested asylum.

At his hearing before the IJ, Lim testified and offered two affidavits from men purporting to be supervising officers in the Philippines. These affidavits confirm Lim's role in the Subona investigation and Lim's subsequent appearance on the NPA death list.

Without questioning Lim's credibility or the validity of the affidavits, the IJ rejected Lim's claims for asylum and withholding of deportation. The IJ found no past persecution, because "nothing ever happened to [Lim] on account of these threats." The IJ further found that Lim demonstrated no well-founded fear of future persecution, because Lim lived in the Philippines without harm for six years after receiving the threats, and because "the strength of the NPA has been substantially diminished in the Philippines" and thus "there would appear to be no reason why [Lim] might not be able to relocate in another area of the Philippines."

On appeal, the BIA noted (1) that the IJ correctly recognized Lim's six-year period of no harm; (2) that *former* policemen, "as a social group," are not subjected to reprisals; (3) that Lim's family remains in the Philippines unmolested; and (4) that there

was "no reason to disturb" the IJ's finding that Lim could internally relocate. In response to these mitigating factors, the BIA affirmed the IJ and held that Lim's fear was not well founded and that Lim did not risk a clear probability of future persecution.

## JURISDICTION & STANDARD OF REVIEW

This court has jurisdiction under § 106(a) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1105a(a). On petition for review, we determine whether substantial evidence supports the BIA's determinations. *See* 8 U.S.C. § 1105a(a)(4); *Acewicz v. INS*, 984 F.2d 1056, 1061 (9th Cir.1993). We will reverse the BIA if no reasonable factfinder could find the petitioner ineligible for asylum. *See INS v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). We review questions of law *de novo*. *See Harpinder Singh v. Ilchert*, 63 F.3d 1501, 1506–07 (9th Cir.1995).

Our review is limited to the BIA's opinion, except where the BIA adopted the IJ's reasoning. *See Castillo v. INS*, 951 F.2d 1117, 1120 (9th Cir.1991). Further, because neither the IJ nor the BIA made negative credibility findings, we are "required to accept [Lim's] testimony as true." *Leiva–Montalvo v. INS*, 173 F.3d 749, 750 (9th Cir.1999) (citations omitted).

## DISCUSSION

### A. Sufficiently Raised Issue on Appeal

We hold that Lim sufficiently raised issues on appeal, and thus we decline to dismiss. Read liberally, Lim's *pro se* opening brief, although unburdened by authority, suggests that Lim seeks asylum because he suffered past political persecution and fears future political persecution by an armed and aggressive anti-government group. His supplemental brief, with which he was assisted by counsel, contains citations to authorities and more tradition-

al legal argument. The Government does not suggest that the issues on appeal are unclear and, indeed, the Government has fully and capably briefed those issues.

 It is true that Lim's opening brief fails to fulfill several formal requirements, including failing to provide either a jurisdictional statement or citations to authority. *See* Fed. R.App. P. 28(a)(4), (9). Courts, however, frequently refuse to dismiss *pro se* appeals for formal defects where the opposing party suffers no prejudice. *See, e.g., Balistreri v. Pacifica Police Dept.,* 901 F.2d 696 (9th Cir.1988) (*pro se* appellant's failure to comply with formal requirements did not justify dismissal); *U.S. v. Sanders,* 434 F.2d 219 (4th Cir. 1970) (*per curiam*) (*pro se* appeal not dismissed for failure to supply citations to authority). Although courts do not offer a briefing service, courts also do not bar the doors to *pro se* pleaders.

### B. Asylum

Under § 208(a) of the Act, 8 U.S.C. § 1158(a), Lim is eligible for asylum if he is a "refugee," i.e., if he is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see Elias–Zacarias,* 502 U.S. at 481. We hold that Lim qualifies for asylum under § 208(a) of the Act, because he has a well-founded fear of future persecution on account of political opinion.

### 1. On Account of Political Opinion

 Assuming that Lim risks persecution (*see infra* § B.2), such persecution would be "on account of political opinion" imputed to him by his persecutors. In *Briones v. INS,* 175 F.3d 727 (9th Cir. 1999) (en banc), we addressed the case of a Filipino government informer who, like Lim, allegedly appeared on NPA death lists and received death threats in letters tied with black ribbon. *See id.* at 728. We held then, as we do now, that retaliation against the informer was indeed on

account of imputed political opinion and not merely personal revenge. *See id.* at 730. *Briones* thus supports our conclusion that political revenge and political persecution are not mutually exclusive.

Our en banc companion opinion in *Borja v. INS,* 175 F.3d 732 (9th Cir.1999) (en banc), strengthens the conclusion that mixed motivations can effect asylum eligibility. Notably, the *Borja* en banc court reversed and withdrew the very opinion that the Government cites here for support. *See Borja v. INS,* 150 F.3d 1223 (9th Cir.1998), withdrawing 139 F.3d 1251 (9th Cir.1998). Our en banc court held that extortion motivated partly by greed could qualify as persecution on account of political opinion, provided that the extortion had a *partly* political motivation. *See Borja,* 175 F.3d at 736–37. The opinion describes this conduct as "extortion plus." *Id.* at 736. Under *Borja* and *Briones,* the threats to Lim are accurately viewed as "revenge plus"—revenge partly motivated by (and thus on account of) imputed adverse political opinion.

### 2. Well–Founded Fear of Future Persecution

 We further hold that the evidence compels the conclusion that Lim's fear of persecution is "well founded." For a fear to be well founded, it must be both subjectively genuine and objectively reasonable. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 430–31, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). The BIA did not question Lim's credibility or the genuineness of his fear. Rather, the BIA denied asylum on the grounds that Lim's fear is *unreasonable,* that is, that performance on the death threats is not so likely as to cause a reasonable person to fear.

 To effect a well-founded fear, a threat need not be statistically more than fifty-percent likely; the Supreme Court has suggested that even a one-tenth possibility of persecution might effect a well-founded fear. *See id.* at 430, 107 S.Ct. 1207; *Arteaga v. INS,* 836 F.2d 1227, 1233

(9th Cir.1988). Lim was an active opponent of a political group that specializes in murder. Although he was never confronted nor physically harmed, he was threatened with death, he was followed, he appeared on a death list, and his colleagues who received similar threats were killed.

In *Briones,* under similar facts, we held that a "reasonable factfinder would be compelled by this scenario to conclude that Briones's fear is ... certainly objectively well-founded." *Briones,* 175 F.3d at 729. The court went on to write that "it takes little imagination to understand what [the NPA] would do to a successful informer." *Id.* We hold that *Briones* controls, and the following four mitigating factors cited by the BIA are insufficient to obviate Lim's reasonable fear.

■■■ First, Lim's failure to leave the Philippines for six years after the first death threat does not render his fear unreasonable. Although relevant, a post-threat harmless period need not vanquish an asylum claim, particularly where significant evidence suggests that the threats are becoming more menacing. *Cf. Reyes–Guerrero v. INS,* 192 F.3d 1241, 1243–44 (9th Cir.1999) (granting asylum to petitioner who endured death threats for seven years prior to fleeing). If Lim is to be believed, his fear was not induced merely (1) when he was first threatened in 1985, but (2) when his colleagues who had received similar threats were murdered in 1990 and 1991, and (3) when he began being followed in May of 1991. Lim left in August of 1991, shortly after these events, and did not wait to see if he was next on the list.

■■■ Second, Lim's exit from the police force does not eliminate any reasonable fear. That Lim was followed and continued to receive threats after retirement only confirms the natural assumption that the NPA did not forgive him upon his retirement.

■■■ Third, we hold here that, although relevant, "the fact that the [Lim] family is safe does not refute his claims of persecution." *Ceballos–Castillo v. INS,* 904 F.2d 519, 521 (9th Cir.1990) (citation omitted). This court has allowed ongoing family safety to mitigate a well-founded fear, particularly where the family is similarly situated to the applicant and thus presumably subject to similar risk. *See, e.g., Aruta v. INS,* 80 F.3d 1389, 1395 (9th Cir.1996) (finding relevance in the safety of twin sister where fear was based on father's activity); *Rodriguez–Rivera v. INS,* 848 F.2d 998, 1006 (9th Cir.1988) (finding relevance in family safety in the absence of specific threats). However, no evidence here suggests that Lim's family is similarly situated or subject to similar risk, and nothing in the record supports an inference that their safety ensures that Lim will be safe. Lim's colleagues were killed despite the lack of any indication that their families were ever harmed, and the record does not reflect any general indication that families are targets. Indeed, the record indicates that the police murders were intended as propaganda. That propaganda killers neglect to kill women and children does not necessarily extinguish the well-founded fear felt by their government target.

■■■ Fourth and finally, substantial supporting evidence is not provided by the BIA's alternative finding that, "at any event," Lim could safely relocate within the Philippines due to the recent weakening of the NPA. In *Briones* we addressed the same country and the same time frame, and we wrote that "the NPA, although somewhat weaker than before, remains capable of killing its opponents." 175 F.3d at 729; *cf. Borja,* 175 F.3d at 738 ("although the current tide of [NPA] violence may be receding, based upon the record it still exists"). We follow *Briones* here, and we hold that, despite some evidence that might mitigate the probability of persecution, Lim's strong, specific, and corroborated evidence compels the conclusion that he nonetheless has a well-founded fear of future persecution on account of political opinion.

### 3. Past Persecution

Although the events in Lim's case trigger a well-founded fear of future persecution, we hold that the record does not compel the conclusion that those threats, in and of themselves, constituted *past* persecution. We have defined persecution as an "extreme concept" that includes the "infliction of suffering or harm." *Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir. 1998) (citation omitted) ("extreme concept"); *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir.1997) (citations omitted) ("infliction of suffering or harm").

■ Our court generally treats unfulfilled threats, without more, as within that category of conduct indicative of a danger of future persecution, rather than as past persecution itself. *See, e.g., Briones,* 175 F.3d at 729; *Mgoian v. INS,* 184 F.3d 1029 (9th Cir.1999) (holding that a woman who was threatened and harassed, but never touched, had a well-founded fear of future persecution, but making no holding of past persecution); *Barraza Rivera,* 913 F.2d 1443, 1453 (9th Cir.1990) (holding that threats triggered well-founded fear, but did not trigger presumption of withholding raised by past persecution); *Arteaga,* 836 F.2d at 1231 n. 6 (same). In certain extreme cases, we have held that repeated and especially menacing death threats can constitute a primary part of a past persecution claim, particularly where those threats are combined with confrontation or other mistreatment. *See, e.g., Reyes–Guerrero,* 192 F.3d at 1243–46 (repeated bribe attempts, personal confrontations, and death threats); *Del Carmen Molina v. INS,* 170 F.3d 1247, 1249 (9th Cir.1999) (killings of cousins, attempted recruitment, and death threats); *Sangha,* 103 F.3d at 1487 (attack on family, personal confrontation, and death threats).

■ Threats standing alone, however, constitute past persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual "suffering or harm." *Sangha,* 103 F.3d at 1487 (citations omitted); *accord Boykov v. INS,* 109 F.3d 413, 416 (7th Cir.1997) ("In the vast majority of cases … mere threats will not, in and of themselves, compel a finding of past persecution."). Threats themselves are sometimes hollow and, while uniformly unpleasant, often do not effect significant actual suffering or harm. Furthermore, claims of threats are hard to disprove. A finding of past persecution raises a regulatory presumption of future persecution and flips the burden of proof to the INS to show that conditions have changed to such a degree that the inference is invalid. *See Surinder Singh v. Ilchert,* 69 F.3d 375, 379 (9th Cir.1995). Flipping the burden of proof every time an asylum applicant claimed that he had been threatened would unduly handcuff the INS. Of course, credible evidence of political threats will still often trigger asylum eligibility by raising a well-founded fear of persecution in the future. However, we avoid announcing a blanket rule that in every case threats, without more, compel a finding of past persecution.

■ In the context of the case before us, substantial evidence supports the BIA's finding that the threats here did not constitute past persecution, but better fit "within that category of past experience more properly viewed as indicative of the danger of future persecution." *Boykov,* 109 F.3d at 416. Neither Lim nor his family was ever touched, robbed, imprisoned, forcibly recruited, detained, interrogated, trespassed upon, or even closely confronted. That Lim carried on for six years without harm and without fleeing provides additional support for the BIA's finding that the threats here did not inflict sufficient "suffering or harm" to compel a finding of past persecution. The threats to Lim were precisely that—threats of future harm.

Nothing in *Garrovillas v. INS,* 156 F.3d 1010, 1017 (9th Cir.1998), persuades us otherwise. In *Garrovillas,* we reversed an adverse credibility finding by the BIA and remanded for further proceedings. *See id.* at 1015–16. We went on to suggest by

way of *obiter* that Garrovillas's testimony describing NPA death threats, "if true, appear[ed] to establish that he suffered past persecution." *Id.* at 1016. Whereas the more recent *Briones* holds that NPA death threats against a government informer can inspire a well-founded fear of *future* persecution, *Garrovillas* apparently goes further and suggests that such threats can themselves constitute persecution.

Lim's case offers certain mitigating factors absent in our *Garrovillas* opinion. Lim's case offers clear indication of both family safety and Lim's own safety in the Philippines for several years. These mitigating factors weaken his claim that he suffered "suffering or harm" constituting actual persecution, even if those factors do not obviate Lim's reasonable fear under his particular circumstances. Accordingly, under the facts here we prefer the route taken by the more recent *Briones* en banc opinion to that suggested by the *Garrovillas* dicta.

Moreover, to the extent that *Garrovillas* might be read to fashion a blanket rule qualifying past threats as past persecution, we decline to embrace that view for the reasons set forth above. For its suggestion that threats constitute past persecution, *Garrovillas* relies almost entirely on language from *Sangha*, a case in which we addressed conduct far exceeding in ferocity anything proved here, and in which we actually denied asylum. *See Garrovillas*, 156 F.3d at 1016–17 (citing *Sangha*, 103 F.3d at 1487). In *Sangha*, four armed men forced their way into the Sangha home, attacked the Sangha family, demanded money, attempted forcibly to recruit Sangha and his brother, and threatened Sangha with death. *See Sangha*, 103 F.3d at 1486. Although we denied asylum because the attacks were not on account of political opinion, we noted that these events rose to the level of past persecution. *See id.* at 1487. Lim's case is far weaker. Unlike the threats combined with personal confrontation and actual family harm in *Sangha*, Lim's mail and telephone threats, without more, do not compel a finding of past persecution.

■ Our view avoids a definition of "persecution" that would render as mere surplusage the separate "well-founded fear" ground of asylum. The Act and the case law interpreting the Act make clear that there are two general methods of becoming eligible for a discretionary grant of asylum: (1) "persecution" in the past or (2) a "well-founded fear of persecution" in the future. 8 U.S.C. § 1101(a)(42)(A); *see Elias–Zacarias*, 502 U.S. at 481, 112 S.Ct. 812. If mere threats, without more, were enough to constitute past persecution, then it is not clear what would be left of the second category. That is, it is not clear what conduct under such a rule would ever trigger a well-founded fear without simultaneously constituting past persecution itself. We avoid an interpretation that would seemingly reduce the well-founded fear ground for asylum to mere "superfluous words." *Bailey v. United States*, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (refusing to define one statutory term so broadly as to render another word redundant) (citation omitted).

We also find instructive the dichotomy between *Briones* and its companion case *Borja*. As mentioned above, in *Briones*, 175 F.3d at 729, without addressing past persecution, we held that NPA threats triggered a well-founded fear future persecution. On that same day, per the same author and the same en banc panel, in *Borja*, 175 F.3d at 734–35, we held that extortion, beating, and slashing with a knife by the NPA constituted *past* persecution. Lim's threats, while similar to those alleged by Briones, do not even approach anything similar to the maltreatment alleged by Borja. Thus, and for all the reasons above, we do not deem it wise to go beyond the course of action taken by the *Briones* opinion.

## C. Withholding of Deportation

■ An alien is not entitled to mandatory withholding of deportation under

§ 243(h) of the Act unless there is a "clear probability"—i.e., unless "it is more likely than not"—that he will be subject to persecution. *INS v. Stevic,* 467 U.S. 407, 424, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *see also* 8 U.S.C. § 1253(h)(1). This standard is less generous than asylum's "well-founded fear" standard. *See Vilorio–Lopez v. INS,* 852 F.2d 1137, 1140 (9th Cir. 1988). We hold that, although Lim is eligible for asylum, that eligibility does not force the Attorney General to grant withholding of deportation. Because mitigating factors cited by the BIA provide substantial support for its conclusion that Lim's risk of persecution is something less than fifty percent, the Attorney General's discretion is not confined.

▆ Evidence may compel a finding that a fear of persecution is well-founded, even where that same evidence does not compel a finding that persecution will be more likely than not to occur—in the same way a player of Russian Roulette would reasonably fear death, even though only one of six chambers would in fact be fatal. *See id.* ("[A]lthough the alien's evidence may fall short of establishing a 'clear probability' of persecution, the same evidence may qualify the alien for a discretionary grant of asylum."). Consequently, we have held that even where evidence compels a finding of asylum, the BIA may still reasonably find that the petitioner failed to show a clear probability of persecution, and therefore the BIA may justifiably deny withholding of deportation. *See Barraza Rivera v. INS,* 913 F.2d at 1454; *Arteaga v. INS,* 836 F.2d at 1231; *Blanco–Comarribas v. INS,* 830 F.2d 1039, 1041–43 (9th Cir.1987); *Garcia–Ramos v. INS,* 775 F.2d 1370 (9th Cir.1985).

Although we hold the BIA findings to be insufficient to overcome all reasonable fear of persecution, we cannot say that those findings offer insubstantial evidence supporting the denial of withholding of deportation. Lim retired from the police force and lived in the Philippines for six years without harm. His family remains there unharmed, and the dissident NPA has weakened. Despite these facts, Lim has a reasonable fear of persecution; he might indeed suffer persecution upon return to the Philippines. However, we cannot say that such persecution *will* happen, in the sense of being more likely than not. *Cf. Bolanos–Hernandez v. INS,* 767 F.2d 1277, 1285 (9th Cir.1984) ("[T]he mere fact that a threat was made may not be sufficient to establish a clear probability of persecution."). We do not hold that threats can never compel a finding of a clear probability of persecution. We merely hold that, under the circumstances of this case, the mitigating factors cited by the BIA provide substantial evidence to mitigate the risk in this case to something below fifty percent.

We take guidance from our opinion in *Barraza Rivera,* 913 F.2d 1443, in which the petitioner had been forcibly recruited and then had deserted the military after refusing to participate in murder. Similar to Lim's case, Barraza–Rivera and his family had received threatening letters, and one of his colleagues had been killed. *See id.* at 1445–46. We held then, as we hold now, that the petitioner qualified for asylum, because he had a well-founded fear, but that he did not qualify for withholding of deportation, because the evidence did not mandate the conclusion that Barraza–Rivera would suffer persecution more likely than not. *See id.* at 1454. Similarly, in *Arteaga v. INS,* 836 F.2d 1227, we held that threats raised a well-founded fear of persecution, and thus justified asylum, but we recognized that the BIA's denial of withholding of deportation "seem[ed] to be supported by substantial evidence." *Id.* at 1231 n. 6 (citation omitted).

▆ We recognize that our cases often grant both asylum and withholding of deportation, or deny both. Such a practice, when it is warranted, provides the court with a convenient and helpful shortcut—for example, several times we have held petitioners eligible for withholding of deportation, and thus *a fortiori* eligible for

asylum. *See, e.g., Gomez–Saballos,* 79 F.3d 912 (9th Cir.1996); *Bolanos–Hernandez,* 767 F.2d 1277; *Canjura–Flores v. INS,* 784 F.2d 885 (9th Cir.1985). However, nothing in the Act compels such a course in every case, and we do not follow it here. Unlike the cases just cited, the risk of harm to Lim may properly be deemed somewhat mitigated by both the safety of Lim's family and Lim's own post-threat harmless period. *Cf. Gomez–Saballos,* 79 F.3d at 914–15 (brother killed; person who made threats released from prison after petitioner's flight to U.S.); *Bolanos–Hernandez,* 767 F.2d at 1280 (friends and brother harmed; fled eight days after threat); *Canjura–Flores,* 784 F.2d at 887 (uncle killed; threats made even after petitioner's flight to U.S.).

To require that asylum and withholding of deportation must always walk together would be to render the distinction between the two standards mere empty words. We hold that, under the facts of this case, asylum and withholding of deportation can be treated separately.

## CONCLUSION

Lim sufficiently raised an issue on appeal, and he qualifies for asylum on the grounds that he has a well-founded fear of future persecution on account of imputed political opinion. We affirm the denial of withholding of deportation, and we remand so that the Attorney General may exercise her discretion under § 208(a) of the Act. *See Blanco–Comarribas v. INS,* 830 F.2d at 1043.

PETITION GRANTED IN PART, REMANDED.

---

**1.** The panel unanimously finds this case suitable for decision without oral argument. *See*