**James Tavera KHO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 02–70312.
INS No. A72–515–481.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 3, 2003.*

Decided April 9, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

Before BROWNING, PREGERSON, and REINHARDT, Circuit Judges.

MEMORANDUM**

The Board of Immigration Appeals ("BIA") dismissed James Tavera Kho's appeal from the decision of an Immigration Judge ("IJ") denying his application for asylum and withholding of deportation. Kho petitions for review.

The IJ found Kho's testimony incredible, but the BIA disagreed, concluding that a negative credibility determination was not supported by the record. We therefore assume that Kho's factual contentions are true. *Navas v. INS*, 217 F.3d 646, 652 n. 3 (9th Cir.2000).

### I. Asylum

Under 8 U.S.C. § 1158, Kho is eligible for asylum if he is a "refugee," that is, if he is unable or unwilling to return to the Philippines "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

political opinion." 8 U.S.C. § 1101(a)(42)(A). We hold that Kho qualifies for asylum because he has a well-founded fear of future persecution on account of political opinion.

A. *"On account of" political opinion.* Assuming that Kho risks persecution, *see infra* Part I.B, we conclude that such persecution would be "on account of" political opinion. The BIA offered several reasons for concluding otherwise, but substantial evidence does not support the BIA's findings.

■ The BIA found that the NPA did not know Kho's political opinions. This conclusion is not supported by substantial evidence. Kho's conversation with "Fredo," the phone calls Kho received from the NPA threatening him for being a government informant, and the subsequent shooting of Kho's water tank together compel the conclusion that the NPA knew that Kho supported the government.

The BIA wrote that it doubted that the NPA knew Kho was an informer because if they had suspected Kho of being an informer, the NPA "would have shot him instead of his water tank," and because the police report does not offer independent confirmation of the shooting of the water tank. The first reason must be rejected as pure speculation and conjecture. The second is relevant only to Kho's supporting documentation, and "an applicant may establish his case through testimony alone." *Navas,* 217 F.3d at 655.

The BIA also found that the NPA sought to harm Kho for purely economic reasons. This conclusion is also not supported by substantial evidence. The phone calls Kho received compel the conclusion that the NPA's motives were at least in part political. And, as we held in *Lim v. INS,* 224 F.3d 929, 934 (9th Cir. 2000), and *Borja v. INS,* 175 F.3d 732, 737 (9th Cir.1999) (en banc), an alien can prove persecution on account of political opinion even where his persecutors were also motivated in part by economic reasons. Here, as in *Lim* and *Borja,* the evidence compels the conclusion that the NPA persecuted Kho in part because of Kho's support for the government.

The BIA distinguished *Borja* on two grounds: first, that Kho did not affirmatively voice his opposition to the NPA or his support for the government; and second, that the NPA did not wound Kho. The first ground is untenable. Once Kho's testimony concerning the threatening phone calls is credited, it is clear that the NPA knew Kho opposed them as clearly as they knew Borja did. The second ground is also untenable. The *extent* of the persecution Kho suffered, that is, whether or not he suffered physical injury, is irrelevant to the *motivation* for that persecution.

The BIA also rejected Kho's claim that, as an alternative basis for relief, he had a well-founded fear of future persecution as a member of a particular social group based on his status as a government informer. We need not address this aspect of the BIA's decision, because Kho's status as a government informer may serve as the basis for his claim of a well-founded fear of future persecution based on political opinion. *Lim,* 224 F.3d at 934; *Briones v. INS,* 175 F.3d 727, 728–29 (9th Cir.1999) (en banc).

■ B. *Well–Founded Fear of Future Persecution.* We also hold that Kho's fear of future persecution is both subjectively genuine and objectively reasonable, and thus "well founded." *See Lim,* 224 F.3d at 934. The BIA did not doubt that Kho's fear was subjectively genuine. And while the BIA did find that Kho's fear was not objectively reasonable, substantial evidence did not support that conclusion.

Kho was repeatedly confronted by armed belligerents and repeatedly received vivid death threats. His property was riddled with gun-fire late at night, and he had a gun pressed to his side when he was accosted on his way to work early in the morning. "[A] reasonable factfinder would be compelled by this scenario to conclude that [Kho's] fear is ... objectively well-founded." *Lim,* 224 F.3d at 935 (citations and internal quotations omitted).

Contrary to the BIA's finding, Kho's delays in departing the Philippines do not obviate the objective reasonableness of Kho's fear. Kho testified that the NPA continued to threaten his family while he was in Singapore, that the NPA sent him a death threat in the form of a funeral dress upon his return from Singapore, and that Kho and his family left the Philippines as soon after that final death threat as possible. Clearly, the danger to Kho was not diminishing with time. *See Lim,* 224 F.3d at 935 ("[A] post-threat harmless period need not vanquish an asylum claim, particularly where significant evidence suggests that the threats are becoming more menacing.")

■ The BIA also addressed the question of changed country conditions. Relying on the State Department's March 1996 *Profile of Asylum Claims & Country Conditions,* the BIA noted the percentage of the Philippines in which the NPA was active in 1996, and purported to calculate the percentage of the Philippine population who were members of the NPA in 1996. The BIA wrote that because those two percentages were so small, it could not conclude that Kho "would face NPA-administered persecution on a country-wide basis" in 2002.

In *Lim* and *Briones* "we addressed the same country and the same time frame," and indeed State Department materials containing assertions nearly identical to those relied upon by the BIA here. We concluded that the NPA, " 'although somewhat weaker than before, remains capable of killing its opponents.' " *Lim,* 224 F.3d at 935 (quoting *Briones,* 175 F.3d at 729). We follow *Lim* and *Briones* and hold that "despite some evidence that might mitigate the probability of persecution," Kho has established a well-founded fear of future persecution on account of political opinion. *See Lim,* 224 F.3d at 934 ("[E]ven a one-tenth possibility of persecution might effect a well-founded fear.").

■ *C. Past Persecution.* Substantial evidence supports the BIA's finding that the threats here did not constitute past persecution, whether on the basis of political opinion, or on the basis of membership in the social group consisting of government informers. While an alien need not show that a physical injury occurred to make out a claim of persecution, *see Ruano v. Ashcroft,* 301 F.3d 1155, 1159–61 (9th Cir.2002), "[o]ur court generally treats unfulfilled threats, without more, as within the category of conduct indicative of a danger of future persecution, rather than as past persecution itself." *Lim,* 224 F.3d at 936.

### II. Withholding of Deportation

■ An alien is not entitled to mandatory withholding of deportation "unless there is a 'clear probability'—i.e. unless 'it is more likely than not'—that he will be subject to persecution." *Lim,* 224 F.3d at 938 (citations omitted). We conclude that the mitigating factors cited by the BIA and described above "provide substantial evidence to mitigate the risk" of persecution in this case "to something less than fifty percent." *Lim,* 224 F.3d at 938.

### III. Conclusion

We grant Kho's petition for review in part. We affirm the denial of withholding

of deportation but remand so that the Attorney General may exercise his discretion under § 208(a) of the Immigration and Nationality Act.

PETITION FOR REVIEW GRANTED IN PART; REMANDED.