**AGUSTIAWAN, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 07–2087.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) April 16, 2008.

Filed: April 23, 2008.

Michael S. Henry, Esq., Philadelphia, PA, for Petitioner.

Ada E. Bosque, Esq., Christopher C. Fuller, Esq., Michael P. Lindemann, Esq., Washington, DC, United States Department of Justice, Office of Immigration Litigation, for Respondent.

Before: SCIRICA, Chief Judge, CHAGARES and ALDISERT, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

Agustiawan, a native and citizen of Indonesia, petitions for review of a final order of the Board of Immigration Appeals ("BIA"). For the following reasons, we will deny the petition for review.

### I.

Agustiawan entered the United States in July 2001 and overstayed his visa. On April 18, 2003, he was issued a notice to appear for this reason, and on September 11, 2003, conceded his removability. On April 22, 2004, Agustiawan applied for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"),[1] claiming that he had been persecuted due to his political opinion when he was accused of teaching Western thought at the Hidayatullah pesentran ("the school"), a Muslim boarding school in Balikpapan. According to evidence presented by the government, the school teaches puritan, reformist Islam with a strong emphasis on the Qur'an and hadith. The evidence stated that the "Hidayatullah network" is now a "formal, nation-wide" organization, with branches in 200 districts throughout the country, and that it "has had ties [to] Islamic terrorism." However, the organization is "legal" and "recognized by the Indonesian government." (IJ Op. at 8.).

Agustiawan owned a printing business in Balikpapan, and began doing business with the school in the 1980s. In 1995, he volunteered to teach the students silk-screening so as to give them job skills. The founder and leader of the school, Abdullah Said, approved of Agustiawan's classes. Accordingly, he held classes—which also included computer skills—twice a week. According to Agustiawan, Abdullah Said died in 1997, and Kahar Muzakar gradually took over the daily administration of the school. His leadership proved to be much more radical than Said's, and when Muzakar noticed the students dressing in Western-style clothing, he blamed Agustiawan for teaching them Western ideas.

Agustiawan quit teaching at the school in 1999, but told the students that he would teach them for free at his office. Soon thereafter, Muzakar and others came to Agustiawan's office, yelled at him, and destroyed his office equipment. After that, unspecified people repeatedly threw rocks and dead animals at Agustiawan's house. Agustiawan also received two letters from unspecified people that threatened to kill him, and claimed that they had kidnapped his friend and would kill him if Agustiawan did not leave Balikpapan. He asserted that the police refused to act because they were afraid of the school (the police also suggested that he move away).

---

1. United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, 8 U.S.C. § 1231.

Agustiawan and his family thus moved to Jakarta, where he received at least two more threatening phone calls. After receiving visas, Agustiawan and his wife came to the United States. Their eldest son remained in Indonesia.[2] Agustiawan believes that he would be in danger if he returned to Indonesia due the power of the Hidayatullah network and its belief that he promotes pro-Western thought.

On December 7, 2005, the Immigration Judge ("IJ") denied Agustiawan's asylum application as untimely pursuant to 8 U.S.C. § 1158(a)(2)(B). The IJ also denied his applications for withholding of removal and relief under the CAT because the incidents he complained of did not amount to persecution, and because although he was "legitimately" fearful, he did not demonstrate that he would likely be persecuted if he returned to Indonesia. The BIA affirmed the IJ's decision.

Agustiawan, through counsel, filed a timely petition for review that challenges only the decision denying his request for withholding of removal. The government opposes the petition.

## II.

■ We must affirm the denial of withholding of removal[3] if substantial evidence supports the conclusion that Agustiawan failed to prove past persecution (so as to establish a rebuttable presumption regarding future threats to his life and freedom) or a clear probability (more likely than not) that he would be persecuted if he returned to Indonesia. *See* 8 U.S.C. § 1231(b)(3); *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir.2003). Under this standard, "the BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Zubeda*, 333 F.3d at 471 (internal quotations and citations omitted).

Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir.1993).[4] However, we have found that "[t]hreats standing alone constitute persecution only in a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm." *Li v. Att'y Gen.*, 400 F.3d 157, 164 (3d Cir.2005) (internal quotations and citations omitted). Furthermore, we have defined acceptable threats "to include only those that are highly imminent and menacing.... Thus, we have refused to extend asylum protection for threats that, while sinister and credible in nature, were not highly imminent or concrete or failed to result in any physical violence or harm to the alien." *Chavarria v. Gonzalez*, 446 F.3d 508, 518 (3d Cir.2006).

---

2. Agustiawan and his wife have a second son, who lives with them in the United States. Agustiawan testified that his wife did not testify at the removal proceedings because he did not tell her the extent of the threats against him because he did not want to frighten her.

3. We have jurisdiction to review a final order of removal of the BIA under 8 U.S.C. § 1252(a)(1). *See Abdulai v. Ashcroft*, 239 F.3d 542, 547 (3d Cir.2001). Here, in regard to the withholding of removal claim, the BIA stated only that: "In this case, we find no clear error in the [IJ]'s factual findings regarding the nature of the respondent's past

experiences ... and the likelihood of his being harmed in the future, and we agree that he is ineligible for the relief that he seeks." Because the BIA did not adopt or defer to the IJ's ruling, we restrict our review "to the question of whether the underlying record provides substantial evidence for the BIA's conclusions." *See Voci v. Gonzales*, 409 F.3d 607, 613 (3d Cir.2005).

4. Despite the government's argument, it appears that Agustiawan's brief challenges the IJ's finding regarding past persecution as well as the likelihood of future persecution.

In this case, substantial evidence supports the finding that the threats to Agustiawan did not rise to the level of persecution. Although the treatment he endured was frightening and reprehensible, he was not physically harmed, and the death threats were not sufficiently imminent to constitute persecution, especially as he testified that after he moved to Jakarta he returned to Balikpapan several times without incident.

It has been recognized that "unfulfilled threats are generally 'within that category of conduct indicative of a danger of future persecution.'" *Li*, 400 F.3d at 165 n. 3 (citing *Lim v. INS*, 224 F.3d 929, 936 (9th Cir.2000)). Substantial evidence in the record supports the finding that Agustiawan did not demonstrate that it is clearly probable that he will be persecuted upon his return to Indonesia.[5] The fact that Agustiawan's son apparently remains safely in Indonesia cuts against Agustiawan's argument that it is likely that he will be persecuted. *See Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir.2005). Moreover, although the government introduced evidence indicating that the Hidayatullah network has had ties to terrorism, there were no direct links between the network and violence. And Agustiawan testified that he had no knowledge of the network being involved in terrorism or violence. Thus, although many of the facts in this case are troublesome, they are insufficient to compel us overturn the decision that Agustiawan failed to meet the standard for withholding of removal.

For these reasons, and after careful consideration of the record and the parties' contentions, we will deny Agustiawan's petition for review.

---

5. The IJ found that the evidence was insufficient to demonstrate that the Hidayatullah network was still interested in him. Agustiawan argues that this finding was in error because he is not required to show that he would be singled out for persecution. 8 C.F.R. § 208.13(b)(2)(iii)(A) and (B). However, this limitation applies only if there is a pattern or practice of persecution against—in this case—those who promote pro-Western thought to students of the Hidayatullah network. Agustiawan did not attempt to show, and the IJ did not find, that in general, such people were persecuted.