OPINION
PER CURIAM.
Dwi Iriani, her husband (Lucas Benjamin), and their two children (Citra and Vidya Paais) petition for review of the Board of Immigration Appeals’ (“BIA”) final order of removal in their consolidated removal proceeding. For the reasons that follow, we will grant the petition in part and deny it in part, and we will remand for further proceedings.
I.
In July 2004, Petitioners — each of whom is a native and citizen of Indonesia — entered the United States on non-immigrant visas. They stayed beyond the time allowed under their respective visas and were ultimately placed in removal proceedings. In January 2005, Iriani — on the family’s behalf — applied for asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”), arguing that they suffered persecution and feared future persecution on account of her religion.[1]
In November 2006, Iriani testified before the Immigration Judge (“IJ”). She testified that she and Benjamin married in 1985. At the time of the marriage, Iriani practiced Islam and Benjamin practiced Christianity. In 1990, however, Iriani converted to Christianity. A few months after her baptism, her employer demanded that she reconvert to Islam within ten days. Iriani refused to do so and resigned. She found other employment a few days later.
In 1992, Iriani and some of her co-workers at her new place of employment formed a Christian prayer group, which held services during their lunch break. In 1996 they began using a nearby church for their prayer services because their group had grown to include about sixty families. In 2001, the group began to focus on evan-gelization, and Iriani ultimately converted thirteen Muslims to Christianity, including two individuals who were considered leaders in the Muslim community.
In 2002, the vice president of the company that employed Iriani requested to meet with her. When Iriani arrived at the meeting, she noticed that two Muslim leaders were present. One of these leaders *788 told Iriani that if she did not discontinue her Christian activities, his followers would make her do so. A few days later, Iriani’s prayer group received an anonymous call threatening to bomb the group if it did not discontinue its services. In light of these events, Iriani resigned from her job a few weeks later.
Iriani later began holding prayer services in her house. This prayer group initially consisted of twelve families and ultimately grew to include forty-five families. In December 2003, three Muslim leaders from Iriani’s neighborhood came to her house and threatened to kill her family if she did not stop holding Christian activities in her home. Iriani reported this incident to the police, but the officer who fielded her complaint told her that he did not want to get involved in religious affairs.
In January 2004, Iriani received phone calls from Muslims threatening to destroy her house and kill her family if she continued to hold services in her home. The following month, someone punctured a tire on her car while she was holding a prayer service. A few weeks later, Muslims destroyed a Catholic building near Iriani’s house. Finally, in April 2004, several Muslims gathered outside her house during a prayer service and threw rocks at the house. Four individuals ultimately entered the house and threatened to kill Iriani’s family if the prayer group did not stop the service. About three months later, Petitioners fled to the United States.
The IJ found Iriani’s testimony credible but nonetheless denied her request for asylum and withholding of removal. In doing so, the IJ relied heavily on the U.S. State Department’s 2006 International Religious Freedom Report for Indonesia. The IJ only briefly discussed the specific incidents testified to by Iriani, concluding that “the threats did not rise to the level of persecution.” The IJ also rejected Iriani’s request for relief under the CAT.
On appeal, Petitioners challenged the IJ’s denial of asylum and withholding of removal only. The BIA concluded that there was “no adequate basis to disturb the Immigration Judge’s conclusion that the lead respondent did not demonstrate that she experienced past persecution,” and that “the record supports the Immigration Judge’s finding that she had not established that she had a well-founded fear of persecution if she returned to Indonesia.” Petitioners now seek this Court’s review of the BIA’s decision.[2]
II.
We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). Where, as here, the BIA purports to rely on the IJ’s findings, we review the IJ’s decision. See Chukwu v. Att’y Gen. of the U.S., 484 F.3d 185, 189 (3d Cir.2007). We review factual findings, including conclusions regarding evidence of persecution, for substantial evidence. Wong v. Att’y Gen. of the U.S., 539 F.3d 225, 230 (3d Cir.2008). Under this deferential standard of review, we must affirm “unless the evidence not only supports a contrary conclusion, but compels it.” Id. (quoting Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir.2001)).
To establish eligibility for asylum, an alien must show that she is unable or unwilling to return to her home country due to a well-founded fear of future persecution on account of her race, religion, nationality, membership in a particular social group, or political opinion. See 8 *789 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). A showing of past persecution triggers a re-buttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1). If an alien cannot show past persecution, she can still establish a well-founded fear of future persecution by showing that her fear is both subjectively and objectively reasonable. Gomez-Zuluaga v. Att’y Gen., 527 F.3d 330, 345-46 (3d Cir.2008). If an alien fails to demonstrate eligibility for asylum, she cannot obtain withholding of removal, for the standard for withholding is higher than that for asylum. Id. at 348-49.
Whether an alien suffered past persecution and whether she possesses a subjectively and objectively reasonable fear of future persecution are two separate issues. See id. at 341. In this case, however, it appears that the IJ conducted only one persecution analysis, concluding that the harm suffered by Iriani “did not rise to the level of persecution.” Although the IJ did not explicitly state whether this conclusion related to Iriani’s efforts to establish past or future persecution, the IJ’s use of the past tense — “did not rise” — suggests that the IJ was ruling on the former and not the latter.
On appeal, the BIA did not highlight this flaw in the IJ’s analysis. Rather, the BIA’s decision made it seem as if the IJ did conduct two separate analyses, for the BIA held, without more, that (1) there was “no adequate basis to disturb the Immigration Judge’s conclusion that the lead respondent did not demonstrate that she experienced past persecution”; and (2) “the record supports the Immigration Judge’s finding that she had not established that she had a well-founded fear of future persecution if she returned to Indonesia.”
Because the BIA affirmed a conclusion that the IJ seemingly never made and did not provide any of its own reasoning for that conclusion, we are unable to meaningfully review the issue of whether Iriani’s fear is both subjectively and objectively reasonable. Accordingly, we must vacate the BIA’s decision as to this issue and remand so that the BIA can reconsider this issue. See Kayembe v. Ashcroft, 334 F.3d 231, 238 (3d Cir.2003) (“When deficiencies in the BIA’s decision make it impossible for us to meaningfully review its decision, we must vacate that decision and remand so that the BIA can further explain its reasoning.”). We note, without deciding, that Iriani may be able to demonstrate that her fear is both subjectively and objectively reasonable. In the months leading up to Petitioners’ departure from Indonesia, Muslims from their neighborhood made repeated death threats and otherwise attempted to intimidate Iriani into discontinuing her prayer group’s services. Although Iriani sought police protection after receiving the first death threat, the Indonesian police were unwilling to help her. Indeed, the 2006 International Religious Freedom Report states that the Indonesian government “sometimes tolerated extremist groups that used violence and intimidation against religious groups, and it often failed to punish perpetrators of such violence.” In any event, we leave it to the BIA to determine in the first instance whether Petitioners demonstrated both a subjectively and objectively reasonable fear of future persecution.
Although we are unable to review the issue of future persecution, we are able to consider the finding that Petitioners failed to establish past persecution.[3] The *790 substantial evidence supports the conclusion that the harm suffered by Iriani does not constitute past persecution. Threats constitute past persecution in “only a small category of cases, and only when the threats are so menacing as to cause significant actual ‘suffering or harm.’” Li v. Att’y Gen. of the U.S., 400 F.3d 157, 164 (3d Cir.2005) (quoting Lim v. INS, 224 F.3d 929, 936 (9th Cir.2000)). The threats in this case — although undoubtedly frightening and reprehensible — were never acted upon and did not cause Petitioners any physical injury. Additionally, the incidents in which Muslims threw rocks at Petitioners’ home and vandalized their car do not rise to the level of persecution.
In light of the above, we will grant the petition in part and remand to the BIA so that it may consider whether Petitioners have established both a subjectively and objectively reasonable fear of future persecution on account of Iriani’s religion. We will deny the remainder of the petition.

. Petitioners’ brief also argues that they were persecuted on account of their ethnicity. Aside from checking the relevant box in their asylum application and submitting two affidavits that discussed the plight of Chinese persons in Indonesia generally, Petitioners did not indicate during the proceeding before the IJ that they were pursuing an ethnicity claim. In their appeal to the BIA, they argued that the IJ ignored these affidavits and failed to consider their ethnicity claim. The BIA noted, however, that Petitioners never sought to mark the affidavits as exhibits or otherwise enter them into evidence. Moreover, the BIA concluded that the affidavits did not undermine the IJ’s finding that Petitioners did not suffer persecution. The substantial evidence supports the BIA's conclusion.

. In their brief, Petitioners state that they seek review of the denial of their requests for asylum, withholding of removal, and relief under the CAT. Because they did not challenge the denial of their CAT claim in their appeal to the BIA, we lack jurisdiction to review that claim. See 8 U.S.C. § 1252(d)(1); Zheng v. Gonzales, 422 F.3d 98, 107-08 (3d Cir.2005).

. The Government argues that Petitioners' brief made only a passing reference to the issue of past persecution and thus they have waived any challenge to that issue. Although Petitioners' brief, prepared by counsel, is disorganized and far from a model of clarity, we *790 believe that it sufficiently addresses the issue of past persecution — albeit barely — to place that issue before us.