NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-1271
_____

IGORK VILLEGAS, et al.,
Petitioners

v.

ERIC H. HOLDER, JR., Attorney General
of the United States of America,

Respondent

_____

On Petition for Review of a Decision and Order of
the Board of Immigration Appeals
(BIA Nos. A096-082-460, A096-082-462, A096-082-463, A097-716-792)

Argued June 11, 2010

Before: AMBRO, CHAGARES, and GREENAWAY, JR., <u>Circuit</u> <u>Judges</u>.

(Filed: August 27, 2010)

_____

Marc J. Reiter (argued)
Suite 1010
100 First Avenue
Pittsburgh, PA 15222-0000
<u>Counsel for Petitioners</u>

Theodore C. Hirt (argued)
United States Department of Justice

Office of Immigration Litigation
Room 5312
450 5th Street, N.W.
Washington, DC 20001-0000

Thomas W. Hussey
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
Counsel for Respondent

_____

OPINION OF THE COURT
_____

CHAGARES, Circuit Judge.

Igork Villegas ("Villegas"), his wife, Milagros Margarita Moron ("Milagros"), and their two children (collectively, the "petitioners") petition this Court for review of the Board of Immigration Appeals's ("BIA") order, inter alia, denying them withholding of removal. For the reasons set forth below, we will deny the petition.

I.

Because we write solely for the benefit of the parties, we only briefly summarize the essential facts.

The petitioners are citizens and natives of Venezuela, and entered the United States on February 18, 2001. Prior to arriving in the United States, both Villegas and Milagros were involved in the Democratic Action Party ("DAP"), a political party

2

actively opposed to Venezuelan President Hugo Chavez. Villegas was an organizer who distributed anti-Chavez materials and participated in public demonstrations against Chavez. Milagros was also involved in the party, but had to scale back her party activities to care for the couple's children. Other members of their extended families were also involved in the DAP.

The petitioners claim that in late 2000, Villegas began receiving threats, both in person and on his work phone, telling him that he should support Chavez if he wanted to protect his family. Joint Appendix ("JA") 350-51. Shortly thereafter, the petitioners claim that they began receiving threatening phone calls at their home, typically very late at night. Id. The men making the threats allegedly belonged to a group called the Bolivarian Circles, a pro-Chavez organization with ties to the government.

One day in November 2000, when Villegas left work to go home, he discovered large, conspicuous graffiti written on his car which stated that he should support Chavez if he wanted to protect the lives of himself and his family. JA 354-55. On another occasion in December 2000, after leaving a meeting at his church, he found his tires slashed, and his car defaced with graffiti which stated that "next time you will find your car in the parking lot of [the] dead." JA 356.

In January 2001, the petitioners claim that there was an attempted kidnapping of Milagros and one of the couple's children, who was three years old at the time. They claim that three members of the Bolivarian Circles intercepted her while dropping the

child off for school and tried to take the child from her. JA 419. A scuffle ensued, but was apparently broken up by another parent, who fired a pistol into the air, scaring off the would-be kidnappers. Id. The family left Venezuela for the United States the next month.

Although the petitioners claim that they left Venezuela because they were afraid of punishment and retribution at the hands of Chavez, they did not file an asylum application until December 29, 2003, well over two years after they had entered the United States. On March 4, 2004, the asylum office determined that the petitioners had not demonstrated eligibility for an exception to the one-year filing requirement, since they failed to give a reasonable explanation for the delay. The office therefore referred the petitioners' case to the immigration court.

On March 20, 2004, the Department of Homeland Security ("DHS") served a Notice to Appear on the petitioners, charging that they were subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(1)(B). The petitioners appeared before an Immigration Judge ("IJ") on April 24, 2004, at which time they admitted all allegations in the Notice to Appear and conceded removability. They instead sought withholding of removal, protection under the Convention Against Torture ("CAT"), and asylum.

In addition to the testimony of Villegas and Milagros, the petitioners presented a letter from a school administrator that their children had been in school and that Villegas and Milagros were people of good character, but the letter failed to mention the alleged

4

attempted kidnapping incident. Evidence was also introduced, including a document from the Bureau of Democracy, Human Rights, and Labor entitled "Harassment of the Opposition in Venezuela," that detailed how Chavez and those working for Chavez, including the Bolivarian Circles, cracked down on political dissidents with threats and violence. The document estimated that government or government-supported security forces killed approximately 6000 Venezuelans between 2000 and 2005.

On November 1, 2006, the IJ denied the petitioners' application for asylum[1] and protection under the CAT, but granted their application for withholding of removal. The IJ found the testimony of Villegas and Milagros credible with regard to all incidents except for the kidnapping incident. The IJ stated that the omission of the kidnapping incident from the school administrator's letter, coupled with the fact that Villegas and Milagros gave conflicting testimony about the incident, led her to find that the alleged attempted kidnapping incident was a fabrication. Overall, the IJ concluded that the petitioners had shown that there was a "clear probability" that they would persecuted if removed to Venezuela.

The petitioners appealed the IJ's determination that the testimony offered regarding the kidnapping incident was not credible, and DHS appealed the IJ's decision to

---

[1] The IJ held that the application for asylum was untimely, as it was filed well after the one-year deadline for filing such an application. The IJ rejected the petitioners' claim that they should qualify under the "extraordinary circumstances" exception to the time limit because their lawyer was ineffective.

5

withhold removal to the BIA. On December 31, 2008, the BIA held that the petitioners did not qualify for withholding of removal, and vacated the IJ's order granting relief.

The BIA found that the IJ's credibility and factual determinations were not clearly erroneous, and went to hold that even if they were, the attempted kidnapping allegations would not rise to the level of past persecution. With regard to the petitioners' other allegations, the BIA held that they fell short of the type of threats that are so menacing that they rise to the level of past persecution. The BIA held that the petitioners had also failed to show a clear probability of future persecution. The BIA finally held that it agreed with the IJ's holdings that the petitioners failed to establish CAT eligibility and that their application for asylum was time-barred. The BIA, as a result, vacated the IJ's withholding of removal, dismissed the petitioners' appeal, and remanded the matter for consideration of voluntary departure.[2]

The petitioners filed a timely petition for review of the BIA's decision to this Court.

## II.

This Court has jurisdiction to review final orders of removal pursuant to 8 U.S.C. §

---

[2] The IJ held a voluntary departure hearing on remand, and petitioners appealed to the BIA. On February 24, 2010, the BIA stated that the tapes containing the testimony of the hearing and the IJ's oral decision were missing, and returned the record to the Immigration Court to either prepare a transcript or hold a new hearing. However, under Yusupov v. Attorney General, 518 F.3d 185, 195-96 (3d Cir. 2008), this Court has jurisdiction to consider the petition for review of a final removal order notwithstanding the remand for consideration of voluntary departure.

1252.

Where the BIA adopts the IJ's findings but issues its own decision, we review the BIA's decision and the IJ's decision to the extent it was relied upon by the BIA. Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We review the BIA's determinations as to past persecution and probability of future persecution under the substantial evidence standard, Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001), and the Court will not disturb the BIA's findings if they are supported by reasonable, substantial, and probative evidence in the record when viewed as a whole, INS v. Elias-Zacarias, 502 U.S. 478, 480 (1992). This Court has explained that under such a standard, "BIA findings 'must be upheld unless the evidence not only supports a contrary conclusion, but compels it.'" Wong v. Att'y Gen., 539 F.3d 225, 230 (3d Cir. 2008) (quoting Abdille, 242 F.3d at 484).

III.

As an initial matter, we note that the petitioners have not appealed the BIA's determination that any asylum petitions were filed in an untimely matter, or that they were not eligible for protection under the CAT. They have therefore waived these arguments. This appeal is limited to whether the BIA's decision to deny the petitioners withholding of removal was in error.

"[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country

7

because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The petitioner must establish by a "clear probability" that his or her life or freedom would be threatened if removed from the United States. INS v. Stevic, 467 U.S. 407, 413 (1984).

The petitioners advance two arguments in this appeal. They first claim that the BIA's determination that they did not face past persecution was not supported by substantial evidence, given the ample evidence of threats and harassment in the record. They next argue that the BIA's determination that they had not shown a clear probability of future persecution was also not supported by substantial evidence.

## A.

The petitioners contend that the BIA's determination that they did not suffer past persecution is not supported by substantial evidence. This Court has defined persecution as "threats to life, confinement, torture, and economic conditions so severe that they constitute a threat to life or freedom. By contrast, . . . '[g]enerally harsh conditions shared by many other persons' do not amount to persecution." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). The petitioners contend that they were subjected to past persecution before fleeing Venezuela in February 2001. They advance two main arguments in support of this contention.

## 1.

The petitioners first argue that the alleged attempted kidnapping constituted past

persecution. The IJ found that the petitioners' claim regarding the incident was a "fabrication." JA 221. This Court has not addressed the issue of whether attempted kidnapping constitutes past persecution.

The IJ stated that the multiple inconsistencies in the testimony of Villegas and Milagros with regard to the incident, "coupled with" the total lack of any mention of the incident in the letter from a school administrator – despite the fact that Villegas testified that he had specifically asked the administrator to discuss the incident in her letter, JA 410-11 – "cumulatively" led her to the conclusion that Villegas and Milagros had "fabricated" the incident to "bolster" their case. JA 220-21.

The petitioners claim that the IJ's decision was not supported by substantial evidence, that it was inconsistent for the IJ to doubt their veracity as to this one particular incident when there was no evidence that pointed to it being a fabrication, and that it was improper for the IJ to require corroborating evidence.

This Court has held that even if testimony is otherwise credible, there are certain situations under which an IJ may reasonably require corroboration:

> The regulation states that credible testimony <u>may</u> be enough to meet the applicant's burden of proof. Saying that something may be enough is not the same saying that it is <u>always</u> enough; in fact, the most natural reading of the word "may" in this context is that credible testimony is neither per se sufficient nor per se insufficient. In other words, "it depends." And, according to the BIA, it depends, at least in part, on whether it would be reasonable to expect corroboration.

Abdulai v. Ashcroft, 239 F.3d 542, 552 (3d Cir. 2001) (emphasis in original). The Court

9

went on to explain that "the BIA's rule only holds a failure to corroborate against an applicant when: (1) it is 'reasonable to expect' corroboration; and (2) the applicant has no satisfactory explanation for not doing so." Id. at 553.

It was reasonable for the IJ to expect corroboration. The petitioners were alleging that an attempted forcible kidnapping (a more severe and unusual incident than any of the other allegations made by the petitioners) occurred in a public place, with at least one eyewitness, that the school was aware of this, and yet the petitioners failed to produce any other testimony or evidence as to the alleged incident. It is true that the petitioners gave an explanation for why they failed to do so, but the IJ was not convinced by these explanations, as she stated that they were "implausible, illogical, and unconvincing." JA 221.

The IJ is uniquely situated to analyze all evidence presented, observe the testimony, candor, and demeanor of petitioners and other witnesses, and aggregate all of this information to inform his or her judgment about the petitioners' claims. Here, the IJ's reasons for questioning the veracity of the petitioners' allegations about the attempted kidnapping incident were rational and clear. The petitioners were given an opportunity to explain why they had failed to provide any corroborating evidence which would refute the IJ's doubts, and the IJ found their explanation lacking. We therefore hold that the IJ's finding that the attempted kidnapping incident did not occur is supported by substantial evidence.

2.

We next consider whether, independent of the attempted kidnapping allegations, the petitioners' allegations rise to the level of past persecution. The petitioners have made a number of allegations about harassing and intimidating behavior on the part of Bolivarian Circles, including threats made in person, on the petitioners' home phone, and to Villegas's work phone, as well as two acts of vandalism on the petitioners' automobile. The petitioners argue that this shows a very clear pattern of harassment and threats on the lives of the petitioners, and that the BIA's holding that these incidents did not rise to the standard required for past persecution was not supported by substantial evidence.

"We have held that persecution, while not inclusive of every act that our society might regard as unfair, unjust, unlawful, or unconstitutional, generally includes treatment like death threats, involuntary confinement, torture, and other severe affronts to the life or freedom of the applicant." Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 341 (3d Cir. 2008) (citing Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001)). This Court has expressly held that surveillance and even brief detention does not rise to the level of past persecution, id. at 342, so the petitioners' claims that Bolivarian Circles monitored and followed Villegas and his family cannot form the basis of a past persecution claim.

We next consider the petitioners' claims that Bolivarian Circles members threatened Villegas and his family if Villegas did not support Chavez. This Court has held that "unfulfilled threats, even death threats, d[o] not qualify as past persecution

11

unless highly imminent." Li v. Att'y Gen., 400 F.3d 157, 165 (3d Cir. 2005); see also Chavarria v. Gonzalez, 446 F.3d 508, 518 (3d Cir. 2006) ("[W]e have refused to extend asylum protection for threats that, while sinister and credible in nature, were not highly imminent or concrete or failed to result in any physical violence or harm to the alien."). In Li, this Court held that "[t]hreats standing alone . . . constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm." Li, 400 F.3d at 164 (internal quotation marks omitted). The Li Court approvingly cited cases from the Court of Appeals for the Seventh Circuit and the Court of Appeals for the Ninth Circuit in which those courts held that petitioners threatened repeatedly by government personnel did not rise to the level of past persecution. Id. at 164-65 (citing Boykov v. INS, 109 F.3d 413, 416-17 (7th Cir. 1997); Lim v. INS, 224 F.3d 929, 932-33 (9th Cir. 2000)).

Under the standard set forth by this Court in Li, the threats against the petitioners did not rise to the level of past persecution. The threats were not "highly imminent," id. at 165, and were not "so menacing as to cause significant actual suffering or harm," id. at 164. We therefore hold that the BIA's determination that the petitioners' claims did not establish past persecution was supported by substantial evidence.

12

B.

The petitioners also argue that the BI's determination that the petitioners failed to establish a clear probability of future persecution should they be removed to Venezuela was not supported by substantial evidence.

Unlike in asylum cases, where the standard is that a petitioner must show a "well-founded fear" of future persecution, the more exacting standard for future persecution in withholding of removal cases is the "clear probability" test. Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003). This standard is only met by a showing that it is more likely than not that the petitioner will be persecuted upon being deported back to his or her home nation. See Tan v. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006); Camara v. Ashcroft, 378 F.3d 361, 367 (4th Cir. 2004); Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir. 1995).

Villegas was an organizer of the DAP, but he acknowledged that there were over 250 such organizers in Venezuela at the time. JA 247. While his duties included some leadership and organization, he was not a public figure of the party -- he did not make speeches and was generally not widely known as an opponent of Chavez. His family members who were involved with the DAP did not face persecution. JA 431. Perhaps most damaging of all to the petitioners' claims is that after entering the United States, Villegas was interested in obtaining a visa that would allow him to return to Venezuela for work. JA 216. This substantially undermines his claim about the risk of persecution

13

he would face if he were to return to Venezuela.

The fact that nearly a decade has passed since the petitioners left Venezuela also substantially reduces the risk of future persecution. Most of the Bolivarian Circles members Villegas claims threatened him in the past may no longer engage in the same activities, and there is no evidence that he would still be a target today. We also note that the petitioners concede that the Bolivarian Circles's influence has diminished significantly since they left Venezuela. Petitioners' Br. at 14.

We therefore hold that the BIA's determination that the petitioners had not shown a clear probability of future persecution was supported by substantial evidence.

IV.

For these reasons, we will deny the petition for review.