Carlos E. REYES–GUERRERO; Graciela I. Jimenez de Reyes, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 98–70581.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 17, 1999.

Decided Sept. 16, 1999.

Nancy A. Fellom, Fellom & Solorio, San Francisco, California., for the petitioners.

Lorri Shealy Unumb, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before: SCHROEDER, B. FLETCHER, and HALL, Circuit Judges.

B. FLETCHER, Circuit Judge:

Carlos Eduardo Reyes–Guerrero, and his wife, Graciela Irene Jiminez de Reyes, both citizens of Colombia, petition for review of an order of the BIA sustaining the government's appeal and reversing an IJ's order granting petitioners' applications for asylum and withholding of deportation pursuant to 8 U.S.C. § 1158(a) and § 1253(h). Petitioners allege that Carlos, a member of the Conservative Party, was threatened with death on account of his investigative work for the Ministry of Justice and the Superior Court of Public Order, and in particular for his role in the prosecution of members of the Liberal Party. We have jurisdiction to review a final order of deportation pursuant to 8 U.S.C. § 1105a(a), as amended by section 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. 104–208, 110 Stat. 3009 (Sept. 30, 1996).[1] We grant the petition for review, find petitioners eligible for asylum and grant their applications for withholding of deportation.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Petitioners were both certified attorneys in Colombia. Carlos Reyes, the principal petitioner, was employed by the Ministry of Justice for approximately fourteen years. Carlos was a member of the Conservative Party. The Conservative Party is one of two dominant political parties in Colombia; the other is the Liberal Party. At the Ministry of Justice, judges and attorneys are selected from the Conservative and Liberal Parties in equal numbers.

Carlos was involved in the investigation and prosecution of a wide variety of crimes. In 1980, he was assigned to investigate the "White Collar Scandal" which involved a scheme to embezzle funds from a government pension plan and divert those funds to the Liberal Party. Eighteen defendants were arraigned, including a district attorney, a judge, and the chief of the retirement fund-all members of the Liberal Party. Under Colombian law, no member of a political party may investigate or act as a judge in a case involving members of the party to which he or she belongs. Since Carlos was a member of the Conservative Party, he was assigned to this case.

In 1984, Carlos and Judge Guillermo Cruz–Cruz began getting death threats, warning them against pursuing the investigation. Twice in 1989, Carlos was approached and offered suitcases full of cash as a bribe to drop the case. He requested and was provided protection by the national security agency. After the White Collar defendants were found guilty in 1989, and until he fled Colombia in 1991, Carlos continued to receive threats over the phone and in person. The individuals involved told Carlos that he was not going to get

---

1. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), enacted September 30, 1996, repealed 8 U.S.C. § 1105a for all final orders of deportation and provided transitional rules governing judicial review. Where, as here, a final deportation or exclusion order was issued after October 30, 1996, and the case was pending before April 1, 1997, IIRIRA's transitional rules apply. *See* IIRIRA, Pub.L. No. 104–208, §§ 306, 309, 110 Stat. 3009, 3009–612, 3009–625 to 3009–627 (Sept. 30, 1996), *as amended by* Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat.

away with the damage he caused the Liberal Party. Cárlos was told that he was responsible for the convictions and that he was a stooge for the Conservative Party. He was warned against playing politics, and told that he would be in trouble if the convictions were affirmed on appeal. Although he changed vehicles, residences, offices, and phone numbers, and although he had asked for protection from the government, those perpetrating the threats always managed to find petitioners. Afraid for their lives, Graciela and Carlos came to the United States in September, 1990 and June, 1991 respectively.

The IJ granted petitioners' applications for asylum and withholding of deportation. The INS appealed and the BIA sustained the appeal. The Board found that the criminal defendants were motivated by a desire to thwart the criminal process, irrespective of Carlos' political opinion. Petitioners claim that the evidence they presented compels the conclusion that they have a well-founded fear of being persecuted in Colombia, in part, on account of Carlos' political persuasion should they be required to return.

## II. STANDARD OF REVIEW

■■■ This court must uphold the BIA's denial of asylum if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4); *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Similarly, the BIA's decision whether to withhold deportation is reviewed for substantial evidence. *Mejia–Paiz v. INS*, 111 F.3d 720, 722 (9th Cir.1997). Review is limited to the administrative record. *Velarde v. INS*, 140 F.3d 1305, 1309 (9th Cir.1998). "[W]here the IJ expressly finds certain testimony to be credible, and where the BIA makes no contrary finding, we 'accept as undisputed' the testimony given at the hearing before the IJ." *Singh v. INS*, 94 F.3d 1353, 1356 (9th Cir.1996) (quoting *Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th

Cir.1995)). To the extent that the BIA incorporates the IJ's decision as its own, the court should treat the IJ's statements of reasons as the BIA's, and review the IJ's decision. *Gonzalez v. INS*, 82 F.3d 903, 907 (9th Cir.1996).

## III. STATUTORY REQUIREMENTS

■■ In order to be eligible for asylum, petitioners must show that they are "unwilling or unable" to return to their home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (defining "refugee"). To establish a well-founded fear of persecution, petitioners must show their fear to be both objectively reasonable and subjectively genuine. *See Fisher v. INS*, 79 F.3d 955, 960 (9th Cir.1996) (en banc). The objective component of this test requires showing "by credible, direct, and specific evidence in the record, that persecution is a reasonable possibility." *Meza–Manay v. INS*, 139 F.3d 759, 763 (9th Cir.1998) (internal quotations omitted) (quoting *Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir. 1995)). This showing may be made "by the production of specific documentary evidence or by the credible and persuasive testimony of the applicant." *Id.* "[P]ersecutory conduct may have more than one motive, and so long as one motive is one of the statutorily enumerated grounds, the requirements have been satisfied." *Singh v. Ilchert*, 63 F.3d at 1509; *see Borja v. INS*, 175 F.3d 732, 735 (9th Cir.1999) (en banc); *Briones v. INS*, 175 F.3d 727, 729 (9th Cir.1999) (en banc); *Ratnam v. INS*, 154 F.3d 990, 994 (9th Cir.1998); *Rodriguez–Roman v. INS*, 98 F.3d 416, 430 n. 23 (9th Cir.1996).

■■ Evidence of past persecution alone can establish a well-founded fear. *See Ratnam*, 154 F.3d at 994. Establishing past persecution triggers a rebuttable presumption of a well-founded fear of fu-

ture persecution. *See* 8 C.F.R. § 208.13(b)(1)(i). The INS can rebut this presumption by showing by a preponderance of the evidence that conditions "have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he or she were to return." *Id.*

Where an asylum applicant relies on past persecution on account of political opinion to establish a rebuttable presumption of a well-founded fear of future persecution, she must show that (1) she was a victim of persecution, (2) she holds a political opinion, (3) her political opinion was known to her persecutors, and (4) the persecution was on account of her political opinion. *Sangha v. INS*, 103 F.3d 1482, 1486–87 (9th Cir.1997). To meet this burden, the applicant must establish a "causal connection" between the persecution and the political opinion, either through direct or circumstantial evidence. *Id.; see Lopez–Galarza v. INS*, 99 F.3d 954, 959 (9th Cir.1996).

## IV. DISCUSSION

The BIA erred when it reduced the actions against Carlos Reyes to nothing more than attempts by criminal defendants to disrupt the criminal process. The BIA's mistake was to focus on one motive of the persecutors-which was to disrupt the investigation of the White Collar Scandal-while ignoring substantial evidence in the record that the persecutors saw Carlos as their political enemy.

The criminal justice and political systems in Colombia are closely intertwined. The 1994 State Department Country Profile for Colombia notes that, "[d]ue to insufficient police and judicial resources to investigate and prosecute most killings and the frequently overlapping violent forces at

work, it is often difficult to differentiate political from non-political murders." The investigation undertaken by Carlos, a member of the Conservative Party, into acts of political corruption by the Liberal Party, was, by its very nature, political.

Whatever prosecution Carlos chose to pursue threatened the Liberal Party. This fact was not lost on his persecutors. When Carlos refused to drop the case, he was threatened with death and told that he would pay for the damage done to their party. The BIA was precisely right that Carlos was "perceived to be 'playing politics' or seeking to embarrass the Liberal Party in his attempt to obtain convictions of the defendants." The persecutors called Carlos a Conservative Party stooge and told him that he had damaged their party, and now owed that party a debt. Carlos did not waver from his refusal to end the investigation, remaining a political adversary in the eyes of those threatening to kill him.

This court has found persecution on account of political opinion where one party to a conflict insisted to the victim that the victim was aligned with the other side. *See Singh v. Ilchert*, 63 F.3d at 1509; *Maldonado–Cruz v. United States Dep't of Immigration & Naturalization*, 883 F.2d 788, 792 (9th Cir.1989); *see also Gomez–Saballos v. INS*, 79 F.3d 912, 917 (9th Cir.1996) ("[D]eath threats by people on one side of a civil war against a person suspected of being on the other side constitute[s] persecution on account of political opinion."). The record makes clear that the people who threatened to kill Carlos and Graciela perceived them to be enemies who had inflicted harm on their political cause. This was not, as the BIA described it, simply a case of threats and intimidation of "a prosecutor who was prosecuting,"[2] It was a case of persecu-

---

**2.** It is undisputed that in his fourteen year tenure with the Ministry of Justice, Carlos was often threatened by those he was prosecuting. However, he testified that he took few of those threats seriously as they were

often made by people under strain and would cease once the investigation or prosecution had closed. The threats that arose out of his work on the White Collar Scandal, were, according to Carlos, categorically different from

tion of a Conservative Party member who was prosecuting crimes committed by high ranking members of the opposition. The decision to prosecute and the retaliation for that decision were highly politically charged. Moreover, the death threats continued long after the investigation had ended and the defendants were convicted. There is indisputably a causal connection between the persecution suffered by Carlos and his political opinion. *See Sangha,* 103 F.3d at 1486–87.

■ Because we find that petitioners have demonstrated that they suffered past persecution, they are entitled to the legal presumption that they have a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1)(i); *Borja,* 175 F.3d at 737. To rebut this presumption, the INS invokes the 1994 State Department Country Profile for Colombia. However, the Profile fully corroborates petitioners' testimony that they would be in danger of being killed should they return to Colombia. Under a subsection entitled "Intimidation of the Judiciary," the Profile notes that "[m]agistrates, judges, attorneys, and prosecutors have been suborned, threatened, assassinated, or had family members killed in connection with certain cases." Equally unreassuring is the Profile's statement that "[g]iven the complexity of the internal order situation, the line between political disappearance and kidnapping is often unclear, but Colombia suffers one of the world's highest rates of abductions." Nothing in the Profile indicates that the situation in Colombia has changed at all, much less improved to a degree that suffices to rebut petitioners' well-founded fear. Moreover, a letter to petitioners from the secretary-general of the union of judicial employees in Colombia, sent in June, 1991, stated that violence against judges and their employees continued unabated. The letter included a list of the names of judges and judicial employees

who had been murdered since petitioners fled. For these reasons, the presumption that petitioners have a well-founded fear stands unrebutted.

Because the INS did not rebut the presumption that it is more likely than not that petitioners' lives or freedom would be threatened upon returning to Colombia, the BIA erred by denying their withholding of deportation. *See* 8 C.F.R. § 208.16(b)(2); *Singh,* 63 F.3d at 1510.

We remand this case to the BIA with instructions to grant petitioners' application for withholding of deportation and to present this matter to the Attorney General as eligible for the exercise of her discretion as to asylum under 8 U.S.C. § 1158(b).

PETITION GRANTED.

the usual non-serious threats directed against him. They also lasted well beyond the close

of that case.