WHITE, J.,
concurring in part and dissenting in part.
Because I conclude that Petitioners presented substantial evidence supporting that Lead Petitioner and his family were targeted and persecuted on the basis of his implied or actual opposition to Georgian government corruption and/or whistleblowing, and that Petitioners were prejudiced by ineffective assistance of their first counsel, I respectfully dissent. As to the remaining claims, I join in the majority opinion.
Lead Petitioner was working as a security officer for the Georgian government (Georgian Parliament) when he discovered a colleague (also a security officer in the Parliament) and two others attempting to rob the Parliament safe. The robbers offered him $100,000 to “look the other way.” Lead Petitioner testified against his robber-colleague, and later attempted to find out who was behind the plot to steal the money. He repeatedly asked his supervisor at the Georgian Parliament/government about what happened, and was told that it was not his job to “investigate” and that the case was “closed.” Shortly after, Lead Petitioner was transferred from his position at the Parliament to a position at the airport.
After being transferred from the Georgian Parliament to the airport, Lead Petitioner was almost run over by a car, a white Volga, he received several threatening phone calls, and his son was kidnapped (by men in a white Volga) for several days, beaten so severely that he lost his hearing, and left by the side of the road to the airport. Lead Petitioner’s supervisors refused to investigate his son’s kidnaping. Lead Petitioner left Georgia several months after these incidents took place. Subsequently, his brother was beaten (but not robbed) in the apartment complex where the family lived.
Petitioners presented ample circumstantial evidence that the Georgian Parliament/government attempted to stop Lead Petitioner from pursuing an investigation and/or discovering who was behind the attempted robbery of the Parliament safe. The evidence strongly suggests that the robbery was planned internally, and that by uncovering the robbery, testifying *576 against one of the robbers, a fellow security officer in the Georgian Parliament, and attempting to investigate who was behind the foiled robbery, Lead Petitioner was actively rooting out government corruption.
The BIA’s decision denying Petitioners’ Motion to Reopen refers only to two supplemental documents submitted with Petitioners’ Motion to Reopen, Lead Petitioner’s affidavit and Beka’s affidavit, and does not refer to the updated 1-589 forms, which specifically note that Koba and his family were targeted because he opposed governmental corruption.
Lead Petitioner’s and Beka’s 1-589 forms, which were sworn under penalty of perjury, supported that a nexus existed between Lead Petitioner’s stance against Georgian government corruption or his whistleblowing and Petitioners’ past and future persecution, contrary to the conclusion of the BIA.
If the BIA reviewed the sworn 1-589 forms and concluded that they did not support that Lead Petitioner was persecuted on the basis of political opinion, it erred. Whistleblowing “against corrupt government officials [ ] may constitute political activity sufficient to form the basis of persecution on account of political opinion. Refusal to accede to government corruption can constitute a political opinion for purposes of refugee status.” Grava v. INS, 205 F.3d 1177 (9th Cir.2000) (citing Reyes-Guerrero v. INS, 192 F.3d 1241, 1245 (9th Cir.1999), and Desir v. Ilchert, 840 F.2d 723, 729 (9th Cir.1988)); see also Marku v. Ashcroft, 380 F.3d 982, 986 (6th Cir.2004) (recognizing that opposition to government corruption can constitute a political opinion).
Similar to the instant case, the petitioner in Grava, 205 F.3d 1177, was a former law enforcement government official who uncovered smuggling schemes in the Customs office and testified against his supervisor. After testifying, Grava received threatening telephone calls, his tires were slashed, and his pets poisoned. On appeal from the IJ’s denial of Grava’s asylum application, the BIA determined that whistleblowing did not constitute an expression of political opinion. 205 F.3d at 1181. The Ninth Circuit reversed, concluding that the BIA’s determination was based on “erroneous legal premises”:
Whistleblowing against one’s supervisors at work is not, as a matter of law, always an exercise of political opinion. However, where the whistle blows against corrupt government officials, it may constitute political activity sufficient to form the basis of persecution on account of political opinion. See Reyes-Guerrero v. INS, 192 F.3d 1241, 1245 (9th Cir.1999); cf. Marquez v. INS, 105 F.3d 374, 381 (7th Cir.1997) (writing that political agitation against state corruption might well be a ground for asylum). Refusal to accede to government corruption can constitute a political opinion for purposes of refugee status. See Desir v. Ilchert, 840 F.2d 723, 729 (9th Cir.1988). Thus, official retaliation against those who expose and prosecute governmental corruption may, in appropriate circumstances, amount to persecution on account of political opinion....
[] The Board erred in concluding that Grava’s whistleblowing could not constitute an expression of political opinion because he did not concomitantly espouse political theory. When the alleged corruption is inextricably intertwined with governmental operation, the exposure and prosecution of such an abuse of public trust is necessarily political. See Reyes-Guerrero, 192 F.3d at 1245. Thus, in this case the salient question is whether Grava’s actions were directed toward a governing institution, or only against individuals whose corruption was aberrational.
*577 Grava’s position as a law enforcement officer does not per se disqualify him from asylum. To be sure, military officials cannot claim persecution arising solely from the performance of their duties. But Grava does not fear the usual job hazards of a law enforcement officer; his alleged tormentors are not mere criminals or guerrilla forces. Rather, he claims they are instruments of the government itself.
The Board found that Grava failed to establish a nexus between his political opinion and his fear of persecution, but did so on erroneous legal premises. We therefore grant the petition for review and remand to the Board for consideration of whether Grava has proven a well-founded fear of persecution arising from his whistleblowing activities.
Grava, 205 F.3d at 1181-82 (citations and footnote omitted).
Ineffective assistance of counsel occurred at the merits hearing, where original counsel, whom Petitioners retained because he could speak Russian, called only Lead Petitioner to testify and questioned him quickly and cursorily. Lead Petitioner testified through a translator at the merits hearing. Original counsel represented to the IJ that the testimony of Lead Petitioner’s wife was unnecessary because she would merely corroborate Lead Petitioner’s testimony. He also represented that Beka, the son who was kidnapped and severely beaten, was unable to testify, when in fact Beka could have done so with the aid of an interpreter who understood sign language, and likely would have testified that his kidnappers indicated to him that his father’s attempts to further investigate the foiled robbery were behind his kidnapping.
In Beka’s 1-589 updated application, sworn under the penalty of perjury, which was attached to the Motion to Reopen, Beka stated that Lead Petitioner “was an active force against government corruption,” and that Beka was kidnapped by individuals “who were upset with [his] father.”
Original counsel stated in his extremely brief summation that Lead Petitioner had been unable to obtain documentation, whereas Lead Petitioner contends that his attorney never told him that such information was necessary and that he would have been able to obtain it.
In sum, Petitioners’ original counsel failed to (1) argue that extraordinary circumstances excused the late-filing of Lead Petitioner’s asylum petition; (2) inform Lead Petitioner that he should obtain additional documentation, such as affidavits from his brother and Beka’s medical records; (3) prepare Lead Petitioner for his testimony before the IJ; (4) call Beka and other family members to testify at the merits hearing; and most importantly, (5) argue that there was a nexus between the violence against Lead Petitioner and his family and his political opinion/whistle-blowing, and (6) in the appeal he drafted cite any caselaw or present argument regarding such a nexus.[1] Original counsel’s woefully inadequate brief on appeal to the BIA was three paragraphs, and reads as follows:
We respectfully ask the Board of Immigration Appeals to consider re-evaluating Respondent’s case. Although Respondent did not have much by way of physical evidence, we believe that his testimony was credible in that he had detailed facts, including names, to substantiate his experience. It is Respon *578 dent’s contention that he, and his family, face great danger if they are compelled to return to the Republic of Georgia. The same individuals who attempted to bride [sic bribe] the Respondent remain free and are well aware of Respondent’s willingness to testify against them.
Furthermore, he faced continued threats not just to himself, but to his family. His son, while taken by force by unknown individuals, sustained serious injuries. Respondent’s son lost his hearing and requires special care. Respondent and his family were traumatized by this series of events.
It is Respondent’s position that his honesty and dedication to his job put him in this peril. The authorities were simply unwilling or uninterested in helping Respondent secure his and his family’s safety.
Under these circumstances, I cannot agree that Petitioners failed to prove any prejudice resulting from their first attorney’s performance.
For these reasons, I would grant Petitioners’ petition for review.

. In denying the appeal, the BIA noted that "respondents have done little on appeal to challenge the Immigration Judge's decision,” supporting the argument that counsel presented no arguments controverting the IJ’s decision.