FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JORGE ALBERTO REGALADO-ESCOBAR, *Petitioner*, v. ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 09-72964 Agency No. A070-451-936 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 9, 2012—San Francisco, California

Filed June 5, 2013

Before: Andrew J. Kleinfeld and Marsha S. Berzon,
Circuit Judges, and William E. Smith, District Judge.[*]

Opinion by Judge Smith;
Dissent by Judge Kleinfeld

---

[*] The Honorable William E. Smith, District Judge for the U.S. District Court for the District of Rhode Island, sitting by designation.

**SUMMARY**[**]

---

### Immigration

The panel granted in part and denied in part a petition for review of the Board of Immigration Appeals' denial of asylum, withholding of removal, and protection under the Convention Against Torture to a native and citizen of El Salvador, and remanded for the Board to address in the first instance whether petitioner's opposition to violence constitutes a political opinion and whether he established a claim for future persecution on that basis.

The panel granted the petition with respect to petitioner's applications for asylum and withholding of removal because the Board failed to address whether petitioner established a well-founded fear or sufficient likelihood of future persecution on account of a protected ground. The panel directed the Board on remand to re-evaluate whether petitioner's opposition to the strategy of the National Liberation Front for Farabundo Marti ("FMLN") of using violence constitutes a political opinion.

The panel held that substantial evidence supported the finding of no past persecution because the record did not compel the conclusion that petitioner was attacked on account of any principled opposition to the FMLN or its violence, rather than on account of his failure to cooperate in the FMLN's recruitment efforts, and that substantial evidence

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

supported the Board's determination that petitioner failed to establish a clear probability of future torture.

Dissenting, Judge Kleinfeld wrote that after determining that petitioner failed to establish that his past harm was connected to his political opinion, there was no reason for the Board to speculate further about such a possible nexus in the future, and that there is no need for either this court or the Board to reach the issue of when, if ever, views on violence constitute a political opinion.

## COUNSEL

Roger Green (argued) and Jenny Tsai, Green & Tsai, Attorneys at Law, San Francisco, California, for Petitioner.

Tony West, Assistant Attorney General, Civil Division, Cindy S. Ferrier, Senior Litigation Counsel, and Kimberly A. Burdge (argued), Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION

SMITH, District Judge:

Jorge Alberto Regalado-Escobar petitions for a review of the decision of the Board of Immigration Appeals (BIA)

denying his application for asylum,[1] withholding of removal,[2] and relief under the Convention Against Torture.[3]  We review questions of law *de novo* and the BIA's factual findings, including whether an applicant was persecuted on account of his political opinion, under the substantial evidence standard. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Under this standard, this court must uphold the BIA's findings unless "the evidence [the applicant] presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id.* at 483–84.  For the reasons stated below, we deny in part, and grant and remand in part, the petition.

## Background and Procedural History

### A

Regalado is a native and citizen of El Salvador who came to the United States in February 2006 to escape the National Liberation Front for Farabundo Marti (FMLN).[4]  His conflicts with the FMLN began in 2002, when several men showed up

---

[1] 8 U.S.C. § 1158.

[2] 8 U.S.C. §1231(b)(3).

[3] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted* Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85, *implemented at* 8 C.F.R. § 1208.18.

[4] Regalado had previously come to the United States in 1989, also to escape the FMLN, and applied for asylum.  To his knowledge, this first application was never adjudicated.  He returned to El Salvador in 2000 to attend to his sick mother, who died in May 2005.

at Regalado's house and asked him to join an FMLN demonstration that involved burning tires in the street and breaking windows. Regalado said that he was opposed to these activities and refused to join the FMLN demonstration. Before the Immigration Judge (IJ), Regalado stated that he refused to join because he had "always been a neutral person [and does not] agree with parties that use violence to resolve their political problems." He further testified that he "didn't agree with [the FMLN's] political activities," or with their "system" generally, adding that he has "never liked violence" and "never participated with [the FMLN]." The FMLN members said they would "settle this later," and attacked Regalado on the streets a few days later. They beat Regalado with sticks and rocks and told him that if he did not cooperate, "next time would be worse."

Regalado was attacked a second time in early 2003. He was waiting for a bus when two men began to beat him with sticks. They identified themselves as members of the FMLN and they told Regalado that if he did not join them, he and his family "would regret it." After this incident, Regalado went to live with his father in another town but returned to his home in Bosque del Rio periodically to visit his wife and kids.

Regalado was attacked a third time in 2005. As he was exiting a bus, two men approached Regalado, identified themselves as FMLN members and began beating him. Regalado testified to the IJ that he almost died from this beating and one of his attackers told him that next time they would kill him.

**B**

The FMLN is a recognized political party in El Salvador that has significant representation in both national and local governments. The reports of the U.S. Department of State submitted by both Regalado and the Government describe incidents of violence perpetrated by members of the FMLN.

**C**

The IJ denied Regalado's application for asylum, stating that he failed to demonstrate that he was attacked on account of a protected ground under asylum law. Rather, the IJ found that Regalado was "either the victim of recruitment by what appears to be, essentially, a guerilla operation, or simply the victim of criminal activity." In the alternative, the IJ denied Regalado's asylum application because Regalado failed to demonstrate that the government of El Salvador is either unable or unwilling to prevent the harm he suffered and the future persecution he fears. The IJ noted that Regalado did not report the attacks to the police and, during his second attack, fear of the police is the only reason his attackers fled as soon as they did. Lastly, the IJ found that Regalado failed to show that he could not safely relocate within El Salvador.

The IJ also stated that, as Regalado failed to satisfy the burden required for asylum eligibility, he necessarily failed to meet the higher burden required for withholding of removal. Moreover, the IJ held that Regalado failed to demonstrate that he was more likely than not to be tortured if he returned to El Salvador, so he was not eligible for relief under the Convention Against Torture.

## D

The BIA upheld the IJ's conclusions that Regalado is ineligible for asylum, withholding of removal and relief under the Convention Against Torture. The BIA held that Regalado did not have a political opinion that could serve as the basis for an asylum claim because he was not "politically or ideologically opposed to the ideals espoused by the FMLN." Rather, Regalado merely showed that he was opposed to the FMLN's violent activities for which he was being recruited, including demonstrations involving the burning of tires and breaking of windows. Further, the BIA held that Regalado did not show that he was persecuted on account of a political opinion. The BIA concluded that Regalado "failed to establish that at least one central reason for the FMLN members' conduct toward him was tied to his actual or imputed political opinions, rather than to his mere refusal to join their ranks and assist them in their violent activities." Finally, the BIA found that Regalado was ineligible for relief under the Convention Against Torture because he did not show that he was more likely than not to be tortured if returned to El Salvador or that any torture would be inflicted at the instigation of or with the consent of public officials.

## Discussion

To be eligible for asylum, Regalado must prove that he is a refugee; that is, that he is an alien "who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, [a] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). In order to establish past persecution, an

applicant must show that he or she suffered harm that rises to the level of persecution "on account of" a statutorily protected ground. "To demonstrate a nexus between the harm [an asylum applicant] suffered and his political opinion, [the applicant] must show (1) that he held, or his persecutors believed that he held, a political opinion; and (2) that he was harmed because of that political opinion." *Zhiqiang Hu v. Holder*, 652 F.3d 1011, 1017 (9th Cir. 2011) (quoting *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010)). Even without having suffered past persecution, an applicant may establish eligibility for asylum based on a well-founded fear of future persecution. *See Lopez-Galarza v. I.N.S.*, 99 F.3d 954, 958 (9th Cir. 1996) ("Past persecution and a well-founded fear of future persecution provide separate avenues for establishing eligibility for asylum.").

We grant Regalado's petition and remand with respect to his applications for asylum and withholding of removal. With respect to asylum eligibility, the BIA failed to address whether Regalado established a well-founded fear of future persecution on account of a protected ground, and with respect to withholding of removal, the BIA also neglected to address the likelihood of future persecution on such ground. This court's review of a BIA decision is limited to the decision itself, and does not include the IJ's decision, except to the extent that the BIA expressly adopted the IJ's opinion. *See Zhiqiang Hu*, 652 F.3d at 1016. "In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency. If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case." *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004).

Regalado argued before both the BIA and this court that he has a well-founded fear of future persecution on a protected ground, independent of his alleged past persecution.  The BIA rejected this contention without explanation. There is no indication, for example, that the BIA considered the FMLN's transition from a guerilla group to a recognized political party with seats in government when evaluating the objective basis for Regalado's fear of future persecution.  Absent any reasoning from the BIA, we cannot find that substantial evidence supports the conclusion that Regalado has not established a well-founded fear of future persecution or that he is more likely than not to be persecuted if he returns to El Salvador.  Therefore, we remand to the BIA to determine whether Regalado is eligible for asylum or withholding of removal in view of his avowed fear.  *See Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 870 (9th Cir. 2003) ("[I]t is not for us to determine in the first instance whether [the applicant] has shown a well-founded fear of persecution.").

Upon remand, when the BIA determines whether Regalado has a well-founded fear of future persecution on the basis of a protected ground, the BIA must re-evaluate whether Regalado's opposition to the violent activities of the FMLN constitutes a political opinion.  In its prior decision, the BIA erred as a matter of law in holding that opposition to the FMLN's violence could not be a political opinion.

When a political organization has a pattern of committing violent acts in furtherance of, or to promote, its politics, such strategy is political in nature; it advances a political goal through certain means rather than others.  Therefore, opposition to the strategy of using violence can constitute a political opinion that is a protected ground for asylum

purposes. *Cf. Grava v. I.N.S.*, 205 F.3d 1177, 1181 (9th Cir. 2000) ("When the alleged corruption is inextricably intertwined with governmental operation, the exposure and prosecution of such an abuse of public trust is necessarily political."); *Reyes-Guerrero v. I.N.S.*, 192 F.3d 1241, 1245 (9th Cir. 1999) (finding that death threats against a prosecutor who was pursuing an embezzlement case against members of an opposing political party amounted to persecution on the basis of a political opinion because it was difficult to differentiate political from non-political crimes involving government officials in the applicant's home country). In *Grava* and *Reyes-Guerrero*, this court found that where corruption was endemic to a political organization, opposition to the corruption amounted to opposition to the political organization, even though the point of contention was not purely political. *Grava*, 205 F.3d at 1181. Similarly, opposition to a political party's violent activities may amount to opposition to the political party itself, if the violence is integral to the party and inextricably linked to its political activities, rather than constituting mere unrelated acts of violence perpetrated by individuals who happen to be part of a political group.[5]

---

[5] In cases decided after *Elias-Zacarias*, this court has held beliefs about the use of violence to be political opinions. *See Borja v. INS,* 175 F.3d 732, 736 (9th Cir. 1999) (en banc) (construing an asylum applicant's revulsion at an armed group's violence against women and children as a political opinion), *superseded by statute on other grounds as stated by Parussimova v. Mukasey*, 555 F.3d 734, 739 (9th Cir. 2009); *Lazo-Majano v. INS,* 813 F.2d 1432, 1435 (9th Cir. 1987) (holding that a belief that the armed forces are responsible for lawlessness, rape, torture, and murder constitutes a political opinion), *overruled on other grounds by Fisher v. INS,* 79 F.3d 955 (9th Cir.1996). Like this court, the Second Circuit has rejected an "impoverished" view of what may constitute a political opinion. *See e.g.*, *Zhang v. Gonzales*, 426 F.3d 540, 546–49 (2d Cir. 2005) (citing *Osorio v. INS*, 18 F.3d 1017 (2d Cir. 1994)); *accord Manzur v.*

Because the BIA erred as a matter of law, it did not conduct the necessary factual inquiry as to whether Regalado had a protected political opinion. Namely, because it did not recognize that opposition to the FMLN's violent activities could amount to a political opinion, the BIA did not examine whether those violent activities were in furtherance of the FMLN's politics or merely apolitical acts of violence. Additionally, the BIA did not determine the extent to which violence is characteristic of the FMLN's political activities. These factual issues are not for us to determine here. *See Montes-Lopez v. Gonzales*, 486 F.3d 1163, 1165 (9th Cir. 2007) (holding that this court may not decide a claim unless the BIA has done so in the first instance (citing *I.N.S. v. Ventura,* 537 U.S. 12, 16 (2002) (per curiam))). The BIA must make this determination upon remand as part of its evaluation of whether Regalado has a well-founded fear of future persecution on the basis of a political opinion.

The BIA further held that Regalado was not in the past persecuted "on account of" his opposition to the FMLN's violence. Substantial evidence supports this conclusion because, even if the BIA had correctly held that opposition to a political organization's violent activities can constitute a political opinion, the record does not compel us to hold that Regalado was attacked on account of any principled opposition to the FMLN or its violence, rather than on account of his failure to cooperate in the FMLN's recruitment efforts. Under the REAL ID Act of 2005, an asylum applicant must show that the protected activity was "at least one central reason" in the minds of the persecutors for attacking the applicant. 8 U.S.C. § 1158(b)(1)(B)(i); *see also Parussimova v. Mukasey*, 555 F.3d 734, 741 (9th Cir. 2009).

*U.S. Dept. of Homeland Sec.*, 494 F.3d 281, 294 (2d Cir. 2007).

Regalado presented little evidence that his attackers were motivated by anything other than his refusal to join them, increase their ranks, and participate in their violent activities. To have successfully demonstrated past persecution on the basis of a political opinion, Regalado must have shown that he was attacked because of his opposition to the FMLN's ideology or their violent methods of promoting that ideology. Regalado offered no evidence to show that his attackers were even aware of his political beliefs. *See Sangha v. I.N.S.*, 103 F.3d 1482, 1488 (9th Cir. 1997) ("[T]he applicant must . . . show that this opinion was articulated sufficiently for it to be the basis of his past or anticipated persecution." (quoting *Ramos-Vasquez v. I.N.S.*, 57 F.3d 857, 863 (9th Cir. 1995) (internal quotation marks omitted))).

With respect to Regalado's claim for relief under the Convention Against Torture, substantial evidence supports the BIA's conclusion that Regalado failed to show that he is more likely than not to be tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity" if he returns to El Salvador. 8 C.F.R. § 1208.18(a)(1). Regalado has not shown that public officials were aware of the attacks by the FMLN or that public officials would cause or acquiesce in FMLN attacks on Regalado in the future. *See Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1060 (9th Cir. 2006) (holding that public officials acquiesce in torture if they "could have inferred the alleged torture was taking place, remained willfully blind to it, or simply stood by because of their inability or unwillingness to oppose it"). Therefore, we deny Regalado's petition with respect to his claim for relief under the Convention Against Torture.

## Conclusion

We reverse the BIA's denial of Regalado's applications for asylum and withholding of removal, and remand for the BIA to determine whether Regalado has a well-founded fear of persecution on account of a political opinion or whether he is more likely than not to be persecuted on account of a political opinion. We deny the petition with regards to Regalado's claims for relief under the Convention Against Torture.

Each party shall bear its own costs on appeal.

**Petition GRANTED AND REMANDED in part; DENIED in part.**

---

KLEINFELD, Senior Circuit Judge, dissenting:

I respectfully dissent.

The majority concludes correctly that despite the vicious beatings Regalado-Escobar suffered, substantial evidence supported the BIA's conclusion that he was beaten for declining to join up, not because of his political opinion, toward which the FMLN was evidently indifferent. As the majority correctly points out, "the record does not compel us to hold that Regalado was attacked on account of any principled opposition to the FMLN or its violence, rather than

on account of his failure to cooperate in the FMLN's recruitment efforts."[1]

The majority nevertheless remands for findings on future persecution. This makes no sense, since "Regalado offered no evidence to show that his attackers were even aware of his political beliefs."[2] The majority concludes that the BIA has failed to understand that opposition to violence may itself be a political opinion for which someone might be persecuted. That would be an irrelevant inquiry on this record, which doubtless explains why the BIA articulated no philosophical views on the question. Neither they nor we need reach the issue of when, if ever, views on violence constitute a political opinion. Once absence of a factual nexus connecting the beatings to Regalado-Escobar's political opinion was established by substantial evidence on the record taken as a whole, there was no good reason for the BIA to speculate further about such a possible nexus in general or in the future.

As we held in *Zhiqiang Hu v. Holder*, "the nexus inquiry and the persecution inquiry are distinct."[3] If alleged persecution – whether suffered in the past or feared in the future – is not "on account of" one of the five protected grounds, it cannot form the basis of a successful asylum claim.[4] Under the REAL ID Act, the applicant bears the

---

[1] Maj. Op. at 11.

[2] Maj. Op. at 12.

[3] *Zhiqiang Hu v. Holder*, 652 F.3d 1011, 1020 (9th Cir. 2011).

[4] 8 U.S.C. § 1101(a)(42) ("The term 'refugee' means . . . any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to . . . that country because of persecution or

burden to show nexus by showing that a protected ground was "one central reason" for his persecution.**[5]**  Regalad-Escobar did not show that the FMLN knew of his political opinion, let alone that it was "one central reason" for their beating and threatening him.  And he presented no evidence whatsoever implying that the FMLN would likely become aware of his political opinion in the future.  His argument in his brief is that his "Past Persecution Also Amounts to a Well-Founded Fear of Future Persecution Based Upon His Political Opinion."  Because he has not met his burden to show a nexus connecting his political opinion to his past beatings, Regalado-Escobar has no argument regarding future persecution that the BIA needed to address.

It is hard to see why we are publishing an opinion in this case at all, except to wade into ideological speculation about whether a "strategy" of favoring or opposing violence "can constitute a political opinion that is a protected ground,"

---

a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .").  Likewise, to be eligible for withholding of removal, an applicant must demonstrate that his "life or freedom would be threatened in [his] home] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(b)(2); *Zetino v. Holder*, 622 F.3d 1007, 1015 (9th Cir. 2010).

[5] 8 U.S.C. § 1158(b)(1)(B)(i) ("The burden of proof is on the applicant to establish that the applicant is a refugee, within the meaning of section 1101(a)(42)(A) of this title. To establish that the applicant is a refugee within the meaning of such section, the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant."); *see also Parussimova v. Mukasey*, 555 F.3d 734, 740–41 (9th Cir. 2009).

independently of the political goals meant to be advanced by the "strategy."[6] The record does not require this speculation. Although Regalado-Escobar did not want to join the FMLN at least partly because he did not want "to burn tires in the street, also to break windows in the city," substantial evidence, as the majority concedes, supported the BIA's view that the FMLN did not care what his opinions were, and beat him "[b]ecause [he] didn't join their party." This record does not require that the BIA do the case over to address whether Regalado-Escobar's opinions about the use of violence to achieve political ends may themselves be a protected ground, because his opinions were not the reason for the beatings.

The question whether a political opinion about the use of violence in politics, independently of the political goal to be achieved, is a protected ground, will be difficult, when and if we ever have to address it. Congress just said "political opinion," and did not specify what kind of opinion in its definition of "refugee." If any political opinion suffices, then persecution on account of favoring violence would entitle a person to refugee status as much as persecution on account of opposing violence. Favoring violence was a popular theme in old anarchist advocacy by Johann Most and Michael Bakunin, who supported "propaganda by the deed,"[7] and remains a theme in the more modern advocacy of Frantz Fanon and perhaps Edward Abbey. There has long been a romantic notion floating around in many radical movements, favoring all sorts of ends, that violence "liberates creative

---

[6] Maj. Op. at 9–10.

[7] *See* Edmund Wilson, To the Finland Station: A Study in the Writing and Acting of History 265–288 (1940); Gerald Runkle, Anarchism: Old and New 27, 96–98 (1972).

moral forces in human society which lead to social and national renewal."**[8]** Did Congress intend to define persecuted advocates of violence as refugees?

There is no need in this case to answer that question. Without knowing that Regalado-Escobar had a political opinion, the FMLN could not and cannot engage in persecution – past or future – on account of his political opinion.  We can decide whether an advocate of terror bombings persecuted for his opinion favoring violence, for example, is entitled to refugee status, when we get the case.

We should deny the petition, not remand for examination of the unnecessary and potentially thorny issue of whether refugee status on account of persecution for political opinion applies, where the opinion is not about some political end, but about violence as such.

---

**[8]** Fascism: An Anthology 139–140 (Nathanael Greene ed., 1968).