NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 16 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LESTER PASCUAL LOPEZ
AROSTEGUI; ALBA NUBIA RIOS
PEREZ; LESLY DARIANA LOPEZ RIOS,

Petitioners,

v.

PAMELA BONDI, Attorney General,

Respondent.

No. 24-2787

Agency Nos.
A220-580-360
A220-489-902
A220-489-903

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 2, 2025
Pasadena, California

Before: GILMAN, M. SMITH, and VANDYKE, Circuit Judges.**
Dissent by Judge VANDYKE.

Lester Pascual Lopez Arostegui, his wife Alba, and their daughter Lesly

(collectively, Petitioners), all citizens of Nicaragua, petition for review of a

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Ronald Lee Gilman, United States Circuit Judge for the Court of Appeals, 6th Circuit, sitting by designation.

decision by the Board of Immigration Appeals (BIA) dismissing their appeal of a ruling by an Immigration Judge (IJ) that denied their applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition for review.

1. "Where, as here, the BIA adopts and affirms the IJ's order pursuant to *Matter of Burbano,* 20 I. & N. Dec. 872, 874 (BIA 1994), and expresses no disagreement with the IJ's decision, we review the IJ's order as if it were the BIA's." *Chuen Piu Kwong v. Holder*, 671 F.3d 872, 876 (9th Cir. 2011). "We review factual findings for substantial evidence and legal questions de novo." *Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022) (quoting *Guerra v. Barr*, 974 F.3d 909, 911 (9th Cir. 2020)).

2. Regarding asylum, the IJ's determination that Petitioners did not suffer past persecution in Nicaragua is not supported by substantial evidence. The IJ found the testimony and declarations of Petitioners to be credible and gave the evidence full weight. Alba testified that, after participating in an April 2018 antigovernment march, she received threatening text messages warning that if Petitioners "kept supporting the protests, [they] [would] be imprisoned and tortured." In June 2018, Petitioners were stopped and searched by parapolice and warned that if they "did not return home immediately and . . . if [they] continued supporting the marches [they] would be imprisoned." An officer grabbed Alba's

2                                                                                  24-2787

cellphone out of her hand, refused to return it, and said that officers "were going to review her phone to see if she had anything against the government."

A little over a year later, Alba's father was imprisoned for one week and was told by officers that he was "incarcerated because he did not support the Nicaraguan government." The officers threatened that if he "continued supporting the marches, they would kill him and his family." He was released one week later with an explicit warning that the officers "did not want to see any [of his] family member[s] protesting against the government." Approximately a year after that, paramilitary officers assaulted Lester with a large rock that dislocated his foot, telling Lester "that [was] what [he got] for not supporting the Nicaraguan government and the [Nicaraguan Institute of Social Security]." Lester spent three months on bed rest recovering from the injury to his foot.

In the present case, these repeated threats of death, torture, and incarceration are "credible given the history and context of the Ortega regime's killing and torture of its political opponents." *See Flores Molina,* 37 F.4th at 635. The credible threats to Petitioners were elevated by a robbery and close confrontations with paramilitaries. These are the type of circumstances that elevate "mere threats" into "extreme" or "especially menacing" threats that constitute past persecution. *Id.* (distinguishing *Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000)); *see also Navas v. INS*, 217 F.3d 646, 658 (9th Cir. 2000) (collecting cases holding that

credible death threats alone can constitute persecution). In addition, Lester was seriously injured because he did not support the Nicaraguan government. "[W]hen the incidents have involved physical harm *plus something more*, such as credible death threats, [this court] ha[s] not hesitated to conclude that the petitioner suffered persecution." *Aden v. Wilkinson,* 989 F.3d 1073, 1082 (9th Cir. 2021).

Moreover, "'[a]n applicant may suffer persecution because of the cumulative effect of several incidents,' even if no single incident rises to the level of persecution." *Flores Molina,* 37 F.4th at 636 (quoting *Chand v. INS*, 222 F.3d 1066, 1074 (9th Cir. 2000)). The BIA has an "obligation to consider the 'totality of the circumstances' in deciding whether past persecution is shown." *Id.*

In the present case, the IJ evaluated the instances of harm individually and explicitly concluded that each instance did not amount to past persecution "by itself," "alone," or without "other crimes." True enough, the IJ concluded that, "[b]ased on the totality of the circumstances, the [Petitioners] did not establish the harm they suffered met the high burden to amount to persecution." But catchall phrases do not "insulate the BIA from reversal." *See Flores Molina,* 37 F.4th at 639 n.7 (noting that "[w]here there is any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand." (quoting *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011))). By the same logic, where there is any indication that the IJ did not consider the

evidence cumulatively, a catchall phrase is insufficient.

The repeated threats of torture and incarceration, the death threat, the robbery and close confrontations with paramilitaries, the incarceration of Alba's father, and the serious physical harm to Lester must be considered cumulatively and in the broader context of violence targeted at perceived political dissidents in Nicaragua. This record evidence would compel any reasonable adjudicator to find that Petitioners' past experiences "rose to the level of persecution." *See id.* at 637 (quoting *Baghdasaryan v. Holder*, 592 F.2d 1018, 1023 (9th Cir. 2010)). Petitioners have therefore satisfied the first element of past persecution. We leave the remaining elements of past persecution (that "the persecution was on account of one or more protected grounds" and that "the persecution was committed by the government, or by forces that the government was unable or unwilling to control") to be addressed on remand. *See id.* at 633 (discussing the elements of past persecution). If Petitioners establish these remaining elements of past persecution, then a rebuttable presumption of a well-founded fear of future persecution arises. *Id.* at 637.

3.      Additionally, the IJ separately erred by failing to address Petitioners' claim of a well-founded fear of future persecution based on (1) Ortega's pattern or practice of persecution against perceived political opponents, and (2) Petitioners' likelihood of being immediately detained and persecuted upon their return to

Nicaragua. The IJ never evaluated either of these two arguments regarding future persecution. This was legal error that requires remand. *See Sagaydak v. Gonzales*, 405 F.3d 1035, 1040–41 (9th Cir. 2005) (holding that error occurs "as a matter of law" if an IJ "ignore[s] arguments raised by a petitioner.").

The IJ also erred by failing to properly consider all the relevant evidence. "Where the BIA does not consider all the evidence before it, either by 'misstating the record [or] failing to mention highly probative or potentially dispositive evidence,' its decision is legal error and 'cannot stand.'" *Flores Molina*, 37 F.4th at 632 (alteration in original) (quoting *Cole*, 659 F.3d at 772). And a "significant and material disconnect between the IJ's quoted observations and his conclusions . . . indicate[s] that the IJ did not properly consider all of the relevant evidence before him." *Parada v. Sessions*, 902 F.3d 901, 915 (9th Cir. 2018).

The IJ here recognized that Nicaraguan police and parapolice "continue to carry out acts of harassment, intimidation, and violence toward perceived enemies of the regime with impunity." He concluded, however, that Petitioners' "minimal participation in the protests and lack of involvement in opposition politics" suggested that the Nicaraguan government would not persecute them. But this is contradicted by the IJ's factual finding that Nicaraguan parapolice repeatedly targeted Petitioners for three years after they attended a single protest in April 2018. The IJ also found that paramilitaries continued to search for Petitioners after

they left Nicaragua in 2021. When police continue to search for a petitioner, this "suggest[s] that they intend[] to harm him again." *De Leon v. Garland*, 51 F.4th 992, 1008 (9th Cir. 2022).

Similarly, with regard to the arrest of Alba's father, the IJ stated that "the [Petitioners] did not indicate that the arrest was targeted at them rather than general anti-opposition sentiment." But this conclusion is again contradicted by the IJ's finding that the officials "threatened to harm [Alba's father] *and his family* if they did not stop participating in the protests." (emphasis added).

The IJ also failed to address whether the repeated threats to Petitioners were sufficient to constitute a well-founded fear of future persecution. There have been "cases where threats that were insufficient to establish *past* persecution were, nonetheless, sufficient to demonstrate a well-founded fear of *future* persecution." *See Flores Molina,* 37 F.4th at 638 (citing the discussion of such cases in *Lim v. INS*, 224 F.3d 929, 936–37 (9th Cir. 2000)). The IJ failed to mention Alba's testimony that officials threatened to kill her father and his family if they continued supporting the marches. "Threats on one's life, within [the] context of political and social turmoil or violence, have long been held sufficient to satisfy a petitioner's burden of showing an objective basis for fear of persecution." *Kaiser v. Ashcroft*, 390 F.3d 653, 658 (9th Cir. 2004). When an IJ fails to consider this

kind of evidence, his "decision cannot stand." *Flores Molina,* 37 F.4th at 638 (quoting *Cole*, 659 F.3d at 771–72).

4.      The IJ denied Petitioners' withholding-of-removal claim for the same reasons that he denied their asylum claim. Because the IJ erred in his analysis of the asylum claim, we remand Petitioners' withholding-of-removal claim for further consideration. *See id.* "The cumulative-effect requirement articulated respecting asylum applies with equal force to [a] withholding of removal claim." *Salguero Sosa v. Garland*, 55 F.4th 1213, 1220 (9th Cir. 2022).

Petitioners must be credited with a rebuttable presumption of eligibility for withholding of removal if it is determined on remand that Petitioners experienced past persecution on account of a protected ground. *See Flores Molina*, 37 F.4th at 638. But even if Petitioners are not entitled to a presumption of eligibility, all probative evidence related to Petitioners' fear of future persecution must be considered. *Id.* at 638–39.

5.      Finally, regarding the CAT claim, the IJ concluded that, because Petitioners did not demonstrate "a reasonable possibility they would be persecuted if they return to Nicaragua," they have "not established it is more likely than not that they would be tortured." He also found that "the country conditions evidence does not otherwise establish that [Petitioners] would face an independent risk of torture in their home country." The IJ's conclusion on CAT relief fails for the

same reasons as the well-founded-fear-of-future-persecution finding, as discussed above.  On remand, all evidence relevant to the possibility of future torture must be considered.  *See Flores Molina*, 37 F.4th at 639.

**PETITION GRANTED.**



*Lester-Pascual Lopez Arostegui et al. v. Pamela Bondi*, No. 24-2787
VANDYKE, Circuit Judge, dissenting:

I disagree with the majority's decision granting the petition for review of the Board of Immigration Appeals' ("BIA") decision, which adopted and affirmed the Immigration Judge's ("IJ") decision denying Petitioners' applications for asylum, withholding of removal, and Convention Against Torture ("CAT") relief. I would defer to the agency's fact-finding and find no legal error.

*First*, the IJ appropriately conducted a cumulative-effect review. *See Salguero Sosa v. Garland*, 55 F.4th 1213, 1218 (9th Cir. 2022). The IJ stated that it considered the "totality of the circumstances," the same phrase that our court uses to describe the cumulative-effect review. *See, e.g.*, *Flores Molina v. Garland*, 37 F.4th 626, 636 (9th Cir. 2022) (quoting *Guo v. Ashcroft*, 361 F.3d 1194, 1203 (9th Cir. 2004)). The IJ then outlined its analysis, explaining that Petitioners "were not subjected to other crimes, apart from the robbery of the cell phone, which would escalate the police and paramilitaries' statements from 'mere words' to imminent and serious threats." The IJ concluded its analysis by referencing *Sharma v. Garland*, 9 F.4th 1052 (9th Cir. 2021), which sets out the standards for a cumulative-effect review, *id.* at 1061–64. In short, the IJ said it was applying a cumulative-effect review, explicitly conducted that review, and referenced the right legal standard.

*Second*, the record evidence does not compel the conclusion that Petitioners experienced past persecution. The IJ discounted the threats against Petitioners because Alba and her children were never physically harmed, discounted the detention of Alba's father based upon its short length and the absence of any mistreatment, and discounted the injury to Lester's ankle based upon the extent of the injury and the length of the recovery. As a reviewing court, we are not allowed to reach a different conclusion by weighing the evidence differently. *See Gutierrez-Alm v. Garland*, 62 F.4th 1186, 1194 (9th Cir. 2023).

*Third*, the IJ did consider Petitioners' arguments regarding the country conditions evidence. The decision repeatedly cites and describes the country conditions evidence, even noting that "there are hundreds of cases of arbitrary arrests of opposition members." But the decision then explains why Petitioners are *not* similarly situated to the types of individuals described in the country conditions evidence, including because their family members have not been treated similarly, there has been a lengthy passage of time, and Petitioners are no longer members of an opposition party. In short, the IJ dismissed Petitioners' arguments based on the factual determination that their country conditions evidence was inapposite—and the IJ "does not have to write an exegesis on every contention." *Najmabadi v. Holder*, 597 F.3d 983, 990 (9th Cir. 2010).

*Fourth*, the IJ considered all the relevant evidence. The IJ was not required to adopt as true Petitioners' testimony that they are still perceived as opposition members or the testimony about Alba's father's arrest. *See Garland v. Ming Dai*, 593 U.S. 357, 365 (2021). The IJ explained at length why Petitioners are no longer perceived as opposition members and expressed reasonable skepticism of the testimony about the arrest.

*Fifth*, the IJ also considered the threats against Petitioners. The IJ described the threats and then weighed them against the evidence showing that Petitioners are no longer perceived as opposition members. Once again, we cannot reweigh the competing evidence. *See Gutierrez-Alm*, 62 F.4th at 1194.

Finally, the majority's conclusions regarding withholding of removal and CAT relief follow from its conclusions that the agency erred in denying asylum relief. Since I disagree with the majority's conclusions regarding asylum, I also disagree with its conclusions as to those other forms of relief. Because I would deny the petition for review in its entirety, I respectfully dissent.